**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 10, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 10, 2022

*Erin L. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 99396-3 |
| Petitioner/Cross Respondent, | ) | EN BANC |
| v. | ) | |
| PATRICK J. CROSSGUNS, SR., | ) | Filed: March 10, 2022 |
| Respondent/Cross Petitioner | ) | |

MONTOYA-LEWIS, J.—In this case, we are asked to examine the "lustful disposition" doctrine. We are also asked to evaluate whether a prosecutor's statements in closing, asking the jury to decide if the witnesses were telling the truth, constitute misconduct that—absent an objection—was so prejudicial that reversal is warranted. We conclude that the term "lustful disposition" is archaic and reinforces outdated rape myths and misconceptions of sexual violence. Moreover, use of that term wrongly suggests that evidence of collateral offenses relating to a specific victim may be admitted for the purpose of showing that the defendant has a propensity for committing sexual misconduct. Therefore, we now reject the "lustful disposition" label and hold that "lustful disposition" is not a distinct or proper purpose for admitting evidence. To

the extent our precedent indicates otherwise, it is disavowed. However, rejection of the label "lustful disposition" does not modify our established doctrine of allowing "[e]vidence of other crimes, wrongs, or acts" to be admitted as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" pursuant to ER 404(b). In this case, we conclude that evidence of Crossguns's uncharged acts of sexual assault was properly admitted for permissible ER 404(b) purposes. Therefore, the trial court's reference to lustful disposition in its decision admitting the evidence was harmless. Further, we conclude that the prosecutor's statements constitute misconduct, but the prejudice could have been corrected by an instruction. Therefore, we affirm the Court of Appeals in part and reverse in part, and remand to the Court of Appeals for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

### A.    Factual Background

In August 2016, R.G.M.[1] disclosed to her mother, Marsha Matte,[2] that her father, Patrick Crossguns Sr., had sexually abused her. R.G.M. said he had been abusing her for over a year, beginning when she was 12 years old. Shortly thereafter, Crossguns was

---

[1] The Court of Appeals referred to R.G.M. by the pseudonym Rhonda. In 2018, she changed her name from R.G.C. to R.G.M. In this opinion, we refer to her by her current initials, R.G.M.

[2] At the time, Crossguns was married to Matte. R.G.M. is Crossguns's child from a previous relationship. Since the events described in this case, Crossguns and Matte have divorced, Matte has adopted R.G.M., and R.G.M. has remained in Matte's care. In this opinion, we refer to Matte as R.G.M.'s mother.

charged with one count of second degree rape of a child and one count of second degree child molestation. The State also sought two aggravators for each count, alleging that Crossguns used a position of trust to commit the crimes and that the offenses were part of an ongoing pattern of sexual abuse of the same victim. RCW 9.94A.535(3)(g), (n).

### 1. Pretrial Motion To Admit ER 404(b) Evidence

Before trial, the State sought to admit evidence of uncharged sexual abuse of R.G.M. by Crossguns from July 2015 to August 2016. The State also sought to admit testimony from family members regarding these incidents. Crossguns opposed admission of the evidence, arguing that it was improper propensity evidence. The trial court concluded the probative value outweighed any risk of unfair prejudice and ruled the evidence was admissible under ER 404(b) to demonstrate Crossguns's "intent, plan, motive, opportunity, absence of mistake or accident, lustful disposition toward [R.G.M.], and as *res gestae* in the case to show [R.G.M.]'s state of mind for her delayed disclosure." Clerk's Papers (CP) at 119. The court also concluded the evidence was admissible to prove the aggravators but stated "the main factor" for admitting the evidence was to prove Crossguns's "lustful disposition toward[] [R.G.M.]" 1 Verbatim Report of Proceedings (VRP) (July 16, 2019) at 227.

The court issued a limiting instruction that directed the jury to consider this evidence only for the purposes of "intent, plan, motive, opportunity, absence of mistake or accident, lustful disposition toward [R.G.M.], [R.G.M.'s] state of mind for her

delayed disclosure of the alleged abuse, and/or whether the charged conduct was part of an ongoing pattern of sexual abuse and/or involved an abuse of trust or confidence." CP at 93. The instruction also informed the jury, "You may not consider [this evidence] for any other purpose." *Id.*

2. Trial Testimony

At trial, R.G.M. described in graphic detail the ongoing sexual abuse she endured at the hands of Crossguns from July 2015 to August 2016. She testified that the first time he sexually abused her was on a car ride, and over the next year he regularly took her on car rides alone to abuse her. She also described how Crossguns would sneak into her room at night to sexually abuse her and that he did this as often as every other night. R.G.M. said that for over a year, whenever they were alone, Crossguns would sexually abuse her.

R.G.M. testified that sometime in April or May 2016, Crossguns raped her in the basement of their home. This incident was the basis for the charge of second degree rape of a child. She also testified that in August 2016, Crossguns molested her in the living room of their home. R.G.M.'s younger brother, P.M., walked into the living room and observed Crossguns sexually abusing R.G.M.[3] This incident was the basis for the charge of second degree child molestation.

---

[3] P.M. told Matte what he saw, and Matte confronted R.G.M., who initially denied it. Matte then confronted Crossguns, who denied that he was sexually abusing R.G.M. A few days later, Crossguns moved away and never returned. After Crossguns left, Matte asked R.G.M. again, and R.G.M. disclosed the abuse.

4

Matte and three of R.G.M.'s brothers also testified at trial and described their observations. They noticed that Crossguns treated R.G.M. differently from the other children and that he took her with him whenever he left the house. Some of them testified that they observed Crossguns going into R.G.M.'s room at night. They also described changes in R.G.M.'s demeanor during this time period.

Crossguns also testified at trial, and he denied ever sexually abusing R.G.M. S.R.—R.G.M.'s cousin and Crossguns's niece—testified on behalf of Crossguns. S.R. testified that she had asked R.G.M. why she said Crossguns had abused her. According to S.R.'s testimony, R.G.M. said it was a lie that Matte told her to tell. R.G.M. denied ever saying this and testified that she ignored S.R.'s question.

### 3. Closing Arguments

In closing, the prosecutor reviewed the charges and the evidence presented and discussed the jury's role. He pointed out S.R.'s and R.G.M.'s conflicting testimony about their conversation and told the jury, "Somebody's lying. It's your job to determine who's lying. Is [R.G.M.] lying or is [S.R.] lying? And that's your job entirely." 4 VRP (July 22, 2019) at 815. When discussing R.G.M.'s and Crossguns's conflicting testimony about whether any abuse occurred, the prosecutor said, "[Y]ou have the testimony of [R.G.M.] on one hand, and [Crossguns's] testimony on the other hand. Somebody's not telling the truth, and, again, you're going to have to make that decision. Who is lying and who is telling the truth." *Id.* at 817. The defense did not

object. In rebuttal, the prosecutor argued that R.G.M. was telling the truth: "[T]hat's the whole thing. Why would [R.G.M.] make this up? . . . There is no reason for [the State's witnesses] to make this up." *Id*. at 851-52. Again, the defense did not object.

B.     Procedural History

The jury found Crossguns guilty of both counts and both aggravators. Crossguns appealed, challenging the admission of evidence of prior acts and arguing that the prosecutor's statements about the jury's task to determine who was telling the truth constituted misconduct. Crossguns also argued that the prosecutor engaged in misconduct by misstating the law of the missing witness doctrine and that cumulative error warranted reversal. In an unpublished, split decision, the Court of Appeals ruled that the prior acts were admissible under the "lustful disposition" doctrine but reversed the trial court on the basis that the prosecutor engaged in misconduct by misstating the burden of proof. *State v. Crossguns*, No. 37079-8-III, slip op. at 16, 26 (Wash. Ct. App.        Dec.        8,        2020)        (unpublished) https://www.courts.wa.gov/opinions/pdf/370798_unp.pdf.    It    did    not    reach Crossguns's other claim of misconduct or cumulative error. *Id.* at 10, 17. The State petitioned for review on the prosecutorial misconduct issue, and Crossguns cross petitioned on the "lustful disposition" issue. We granted review of both issues.

State v. Crossguns
No. 99396-3

ANALYSIS

A.    The "Lustful Disposition" Doctrine

Generally, ER 404(b) permits admission of evidence of prior bad acts for purposes other than propensity, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The parties dispute whether we should retain or abandon "lustful disposition" as a permissible "other purpose" to admit prior bad acts under ER 404(b). "We do not lightly set aside precedent." *State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008). In order for this court to overturn precedent, "we require 'a clear showing that an established rule is incorrect and harmful.'" *State v. Johnson*, 188 Wn.2d 742, 756-57, 399 P.3d 507 (2017) (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)). "We may also abandon our precedent 'when [its] legal underpinnings . . . have changed or disappeared altogether.'" *Id.* at 757 (alterations in original) (quoting *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014)).

We hold that the term "lustful disposition" must be rejected and that it may no longer be cited as a distinct purpose for admitting evidence under ER 404(b). However, we do not disturb our precedent permitting evidence of collateral misconduct relating to a specific victim for appropriate purposes under ER 404(b), including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The evidence in this case was admitted for such permissible

7

*State v. Crossguns*
No. 99396-3

purposes.

> 1.   "Lustful disposition" is not a separate, permissible purpose for admitting evidence; to the extent our precedent suggests otherwise, it is disavowed

In Washington, the "lustful disposition" doctrine has been used as a means to admit evidence of prior, uncharged acts by the defendant against the same victim. Washington first held that such evidence may be admissible over 100 years ago, early in our state's jurisprudence, though we did not then use the term "lustful disposition." *See State v. Wood*, 33 Wash. 290, 74 P. 380 (1903). We later adopted the label "lustful disposition." *State v. Crowder*, 119 Wash. 450, 452, 205 P. 850 (1922). We have retained the doctrine since then without close examination. *See, e.g.*, *State v. Ferguson*, 100 Wn.2d 131, 667 P.2d 68 (1983).

Our precedent has occasionally mischaracterized the purpose of evidence admitted pursuant to the "lustful disposition" doctrine. For example, in *State v. Thorne*, evidence that the defendant had "acted in a lewd and lascivious manner" with the victim one year prior to the charged offense was admitted to demonstrate "the lustful inclination of the defendant toward the [victim], which in turn makes it more probable that the defendant committed the offense charged" because it "evidences a sexual desire for the particular [victim]." 43 Wn.2d 47, 60, 260 P.2d 331 (1953). *Thorne* has been cited in subsequent cases to describe the term "lustful disposition," but it has not been carefully scrutinized. *See State v. Ray,* 116 Wn.2d 531, 547, 806 P.2d 1220

8

*State v. Crossguns*
No. 99396-3

(1991); *State v. Camarillo*, 115 Wn.2d 60, 70, 794 P.2d 850 (1990); *Ferguson*, 100 Wn.2d at 134; *State v. Golladay*, 78 Wn.2d 121, 141-42, 470 P.2d 191 (1970), *overruled on other grounds by State v. Arndt,* 87 Wn.2d 374, 378, 553 P.2d 1328 (1976); *State v. Fischer*, 57 Wn.2d 262, 264-65, 356 P.2d 983 (1960). We must now reexamine it.

The term "lustful disposition" perpetuates outdated rape myths that sexual assault, including child sex abuse, results from an uncontrollable sexual urge or a sexual need that is not met. This remains an area not well understood and where research is ongoing. Natalie Bennett & William O'Donohue, *The Construct of Grooming in Child Sexual Abuse: Conceptual and Measurement Issues*, 23 J. CHILD SEXUAL ABUSE 957 (2014).[4] Nevertheless, in recognition of how sexual violence *is* a crime of violence that uses unwanted sexual contact as the weapon, most jurisdictions have redefined the crime of rape as sexual assault.

Despite this recognition, Washington courts continue to employ the term "lustful disposition," which uses outdated language that paints a picture that the offender has an overpowering sexual desire for or attraction to their victim. This implies that these motivations are natural and fails to acknowledge the inherent violence in sex crimes and the life-changing impacts such crimes can cause. Although

---

[4] Ninety-one percent of cases of child abuse are committed by someone the victim knows. ADMIN. ON CHILDREN, YOUTH & FAMILIES, U.S. DEP'T OF HEALTH & HUMAN SERVS., CHILDREN'S BUREAU MALTREATMENT SURVEY 2020, 27.

9

the Court of Appeals in this case called the doctrine into question, the majority's concern for the level of specificity of the defendant's sexual desire was misplaced. *Crossguns*, No. 37079-8-III, slip op. at 13. The problem with the doctrine is not whether it demonstrates "general sexual proclivities" because "many men have a lustful disposition to a large population of females or males," but that it evokes sexual desire at all. *Id.*

The term "lustful disposition" suggests that the offender is inherently inclined to be sexually attracted to their victim, that they have a "*lustful inclination*" or "*sexual desire* for the particular [victim]." *Id.* (emphasis added) (citing *Ferguson*, 100 Wn.2d at 134). In other jurisdictions, this doctrine has been called "'depraved sexual instinct,'"[5] "unnatural lust,"[6] and "'lewd disposition.'"[7] These terms all echo incorrect, anachronistic beliefs that sexual assault is a crime primarily of sexual attraction. They also incorrectly suggest that evidence admitted under the "lustful disposition" label may be used as propensity evidence. As discussed further below, it may not.

In addition to being incorrect, the "lustful disposition" label is also harmful. To the extent that it appears to allow propensity evidence, it is clearly harmful because "ER 404(b) is a categorical bar to admission of evidence for the purpose of proving a

---

[5] *State v. Bernard*, 849 S.W.2d 10, 16 (Mo. 1993) (quoting *State v Lachterman*, 812 S.W.2d 759 (Mo. App. 1991)), *overruled in part on other grounds by State v. Vorhees*, 248 S.W.3d 585, 592 n.5 (Mo. 2008).

[6] *State v. Edwards*, 224 N.C. 527, 528, 31 S.E.2d 516 (1944).

[7] *State v. Tobin*, 602 A.2d 528, 531 (R.I. 1992) (quoting *State v. Jalette*, 119 R.I. 614, 624, 382 A.2d 526 (1978)).

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

person's character and showing that the person acted in conformity with that character." *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Moreover, by erroneously focusing on sexual desire, "lustful disposition" perpetuates other rape myths. For example, the misconception that people commit sex crimes based on sexual desire emphasizes outdated, sexist assumptions and expectations about the "desirability" or "complicity" of the victim by analyzing the victim's conduct, clothing, and sexual history. Karen M. Kramer, *Rule by Myth: The Social and Legal Dynamics Governing Alcohol-Related Acquaintance Rapes*, 47 STAN. L. REV. 115, 120, 121 (1994) (discussing "beliefs that alcohol increases sexual arousal[ and] loosens women's sexual inhibitions," making them "acceptable targets for sexual assault"). The misplaced focus on sexual desire in turn reinforces these myths that excuse sex offenders by blaming victims.

Finally, despite the broad language this court has occasionally used to describe "lustful disposition" evidence, the underlying analysis in *Thorne* and other cases reveals that "lustful disposition" is more akin to a permissible showing of intent, motive, opportunity, common scheme or plan, preparation, and absence of accident or mistake. In *Thorne*, this court likened the use of "lustful disposition" to motive, explaining that "'in showing the lustful desire or disposition of the defendant for the prosecuting witness you are showing a motive, i.e., a state of feeling impelling toward the act charged.'" 43 Wn.2d at 61 (quoting *State v. Clough*, 33 Del. 140, 145, 132 A.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

219, 221 (1925)). Similarly, this court in *State v. Leohner* noted that "we have held that evidence of the accused's collateral conduct is admissible to prove his lustful inclination, and to prove a common scheme or design. . . . [A]ppellant tacitly admits that his other acts are admissible to show an absence of accident or mistake." 69 Wn.2d 131, 135, 417 P.2d 368 (1966) (holding testimony that the defendant previously took "unpermitted liberties" with each of the girls named in the information was properly admitted) (citations omitted) (citing *Fischer*, 57 Wn.2d 262; *State v. Johnson*, 60 Wn.2d 21, 371 P.2d 611 (1962)). This demonstrates that "lustful disposition," properly understood, is not a distinct purpose for admitting evidence, but a label used to refer to permissible ER 404(b) purposes in the specific context of sex crimes.This anachronistic label is incorrect and harmful. It is often incorrectly used to admit evidence of behavior that is prominent in crimes of sexual abuse, such as grooming, victim identification, and planning, which has nothing to do with general sexual attraction. Moreover, the term "lustful disposition" reinforces the myth of the pathological, crazed rapist who is a stranger to the victim. By continuing to label this kind of evidence as proof of a "lustful disposition," we perpetuate other rape myths that improperly focus on the victim. This reinforces incorrect and harmful misconceptions about sexual assault. We therefore conclude the term "lustful disposition" is both incorrect and harmful. We reject the "lustful disposition" label, and to the extent that our precedent indicates that "lustful disposition" is a distinct,

*State v. Crossguns*
No. 99396-3

permissible purpose for admitting evidence, we clarify that it is not. The evidence, however, that has come in under this doctrine remains admissible, as we explain below.

> 2. We do not disturb our precedent permitting evidence of collateral misconduct relating to a specific victim under ER 404(b)

As noted above, even where we have purported to rely on the "lustful disposition" doctrine, the evidence in question has generally been admissible for some other, proper purpose, such as intent, motive, opportunity, common scheme or plan, preparation, and absence of accident or mistake. In addition, due to the nature of the crimes of rape and of child sexual abuse, the evidence of other uncharged sexual misconduct may be admissible as part of the crime itself in appropriate cases. In this case, the trial court properly admitted evidence of Crossguns's uncharged sexual assaults for permissible ER 404(b) purposes. Therefore, the court's reference to "lustful disposition" in admitting the evidence was harmless.

Sometimes, evidence that might have been erroneously admitted under the "lustful disposition" label is nevertheless admissible because it is necessary to demonstrate the dynamics between the offender and their victim or victims. "Two necessary components" for the commission of sex crimes "are access and control," and developing trust is necessary to the "'grooming process.'" Basyle J. Tchividjian*, Predators and Propensity: The Proper Approach for Determining the Admissibility of Prior Bad Acts Evidence in Child Sexual Abuse Prosecutions*, 39 AM. J. CRIM. L. 327, 364, 368 (2012) (footnotes omitted). "Manipulating relationships of trust with children

13

for purposes of gratifying the abuser" is a major component to the crime of child sexual assault. David R. Katner, *Delayed Responses to Child Sexual Abuse, the Kavanaugh Confirmation Hearing, and Eliminating Statutes of Limitation for Child Sexual Abuse Cases*, 47 AM. J. CRIM. L. 1, 3 (2020).

Evidence of such manipulation shows the planning and intent involved in building a relationship with the child victim in order to obtain the access and opportunity to commit the acts of sexual assault, as we see in this case, which stands in contradiction with the idea that "lust" is an overwhelming motivator and almost impervious to planning.[8] Therefore, evidence of prior sexual misconduct may be relevant and admissible in cases such as this that involve sexual abuse in the context of a relationship with unequal power dynamics. And, of course, the fact that a case involves crimes of sexual violence does not preclude the admission of evidence for permissible ER 404(b) purposes.

In this case, although Crossguns was charged with only two counts, the trial court admitted evidence of uncharged sexual misconduct from over a year of his abusing R.G.M. The trial court erred in admitting the evidence, in part, under the anachronistic term of "lustful disposition," but any error in admitting the evidence was

---

[8] *See* Georgia M. Winters & Elizabeth L. Jeglic, *Stages of Sexual Grooming: Recognizing Potentially Predatory Behaviors of Child Molesters*, 38 DEVIANT BEHAVIOR 724, 724 (2018) ("Successful grooming involves the skillful manipulation of a child and the community so that sexual abuse can be more easily committed without detection. . . . These behaviors include strategies such as selecting a vulnerable victim, gaining access to the child, developing trust, and desensitizing the victim to touch.").

14

*State v. Crossguns*
No. 99396-3

harmless because the evidence was properly admitted for other, permissible purposes, including "intent, plan, motive, opportunity, absence of mistake or accident, . . . and as *res gestae* in the case to show [R.G.M.]'s state of mind for her delayed disclosure." CP at 119. *See State v. Foxhoven*, 161 Wn.2d 168, 178-79, 163 P.3d 786 (2007) (concluding that the trial court erred when it admitted evidence of bad acts for one reason, but any error was harmless because the evidence was properly admitted for another reason).

The evidence of prior bad acts was also admitted to prove the aggravating factors that Crossguns used a position of trust to commit the crimes and that the offenses were part of an ongoing pattern of sexual abuse of the same victim. Crossguns's arguments are inconsistent on this point; in one part of his brief, he seems to drop the challenge to the admission of the evidence for these other purposes, but in other areas he reasserts that challenge. Even if he does challenge the admission of this evidence, we find it was admissible under ER 404 and conclude that any error was harmless. *Id.*

In sum, we abandon the term "lustful disposition" but hold that the evidence of Crossguns's prior sexual misconduct against R.G.M. was properly admitted for permissible purposes under ER 404(b). Therefore, we affirm the Court of Appeals on different grounds.

B.     Prosecutorial Misconduct

 Prosecutors have "wide latitude" in closing argument, but their argument must

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

be based on the evidence and must not misstate the applicable law. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 713, 286 P.3d 673 (2012) (plurality opinion). The defendant bears the burden to prove prosecutorial misconduct. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). First, the defendant must demonstrate that the prosecutor's conduct was improper. *Id*. Second, they must demonstrate the requisite prejudice. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant objected, they must demonstrate that "the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.* If the defendant did not object at trial, the issue is waived "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61.

In all criminal matters, the State carries the burden to prove each element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The jury's role is to weigh the evidence to determine whether the State has met its burden. *Emery*, 174 Wn.2d at 760. This task is independent of whether the jurors think any witnesses are lying or telling the truth. *Id*.

"Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct." *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). It is improper for a prosecutor to ask the jury to decide who was telling the truth. *Glasmann*, 175 Wn.2d at 713; *see also*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Miles*, 139 Wn. App. 879, 889-90, 162 P.3d 1169 (2007). We have also held that it is misconduct for a prosecutor to plead for the jury to "'speak the truth'" in reaching its verdict. *Lindsay*, 180 Wn.2d at 436-37; *Emery*, 174 Wn.2d at 760. The Court of Appeals has held that it is misconduct for a prosecutor to tell the jury it must find that the State's witnesses are lying in order to acquit a defendant. *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996); *State v. Barrow*, 60 Wn. App. 869, 874-75, 809 P.2d 209 (1991).

"The jury's job is not to determine the truth of what happened …. Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt." *Emery*, 174 Wn.2d at 760. Inviting the jury to decide a case based on who the jurors believe is lying or telling the truth improperly shifts the burden away from the State. *Miles*, 139 Wn. App. at 890. It is misconduct to tell a jury that it must conclude one person is lying and one person is telling the truth in order to reach its verdict. *State v. Wright*, 76 Wn. App. 811, 826, 888 P.2d 1214 (1995). In fact, "a jury need do nothing to find a defendant not guilty." *Emery*, 174 Wn.2d at 759-60. "The testimony of a witness can be unconvincing or wholly or partially incorrect for a number of reasons without any deliberate misrepresentation being involved. The testimony of two witnesses can be in some conflict, even though both are endeavoring in good faith to tell the truth." *State v. Casteneda-Perez*, 61 Wn. App. 354, 363, 810 P.2d 74 (1991). Conflicting evidence can raise reasonable doubt without requiring the

jury to affirmatively decide who it thinks was telling the truth or who was lying; therefore, it is misconduct to ask the jury to reach its verdict based on who the jury believes is telling the truth.

In this case, the prosecutor in closing argument twice told the jurors that it was their job to determine who was lying and who was telling the truth. He discussed R.G.M.'s and S.R.'s conflicting testimonies and told the jury, "It's your job to determine who's lying … [a]nd that's your job entirely." 4 VRP (July 22, 2019) at 815. When he discussed the conflicts between R.G.M.'s and Crossguns's testimony, the prosecutor asked the jury to decide "[w]ho is lying and who is telling the truth." *Id*. at 817. The prosecutor also urged the jury to conclude that R.G.M was telling the truth on rebuttal. This was misconduct.[9] The prosecutor's statements mispresented the jury's role, which is to determine whether the State has proved the offenses beyond a reasonable doubt.

---

[9] The prosecutor also made some references in closing argument regarding Crossguns's Native culture and his eye contact. When Crossguns testified, he had described the significance of eye contact in his Native culture as a member of Blackfeet Nation because some of the State's witnesses had testified about the way Crossguns looked at them. He explained, "When you give a person eye contact, it's just like you—you're challenging them, and then you give quick looks, so that way they know that you got their attention. So that way they don't take it as a threat, and so it's just showing that it's respect." 3 VRP (July 22, 2019) at 691. His counsel clarified, asking, "So if you're—If you make eye contact too long in your culture, that could be taken as a threat?" to which Crossguns replied, "Yes." *Id.*

In closing, the prosecutor discussed Crossguns's testimony and demeanor, saying, "[D]id you see how he looked at me? . . . [I]n his culture, constantly staring at somebody is a threat. And I submit to you that the defendant was threatening [me]." 4 VRP (July 22, 2019) at 818.

While Crossguns does not challenge these statements by the prosecutor in closing argument, we note that it is inappropriate for counsel to utilize any appeal to racist stereotypes to bolster their arguments.

18

However, Crossguns did not object. Therefore, on appeal he must show that the "prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. He must also show that "'no curative instruction would have obviated any prejudicial effect on the jury'" and that "the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id*. at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

In *Emery*, the prosecutor urged the jury to "'speak the truth'" in its verdict and determine the truth of what happened. *Id.* at 751. The defendants did not object. *Id.* We concluded that this was misconduct, but the prosecutor's statements were, at most, potentially confusing and were not "per se incurable simply because they touch upon a defendant's constitutional rights." *Id.* at 763. We held that the prejudice in *Emery* could have been cured by an instruction. *Id*. at 764. Similarly, in this case, we conclude that the prejudice could have been cured by an instruction. Had Crossguns timely objected, "the court could have properly explained the jury's role and reiterated that the State bears the burden of proof and the defendant bears no burden. Such an instruction would have eliminated any possible confusion and cured any potential prejudice stemming from the prosecutor's improper remarks." *Id.*   Therefore, we

*State v. Crossguns*
No. 99396-3

reverse the Court of Appeals.

CONCLUSION

The term "lustful disposition" is an outmoded, inaccurate term that reinforces myths about sexual assault. We abandon this term because it is incorrect and harmful. However, due to the nature of child sexual abuse, we conclude that the evidence was admissible as part of the crime of child sexual assault. We also conclude the evidence was properly admitted for other reasons under ER 404(b). Therefore, any error in admitting the evidence of prior sexual misconduct was harmless. We affirm the Court of Appeals on the evidentiary issue on different grounds. We also conclude that asking the jury to reach its verdict based on who it believes told the truth was prosecutorial misconduct, but any prejudice could have been cured by an instruction. We reverse the Court of Appeals on the misconduct issue. Pursuant to RAP 13.7(b), we remand to the Court of Appeals to consider the other misconduct issue and claim of cumulative error left unresolved. Therefore, we affirm in part and reverse in part, and remand to the Court of Appeals for further proceedings consistent with this opinion.

*State v. Crossguns*
No. 99396-3

_____
Montoya-Lewis, J.

WE CONCUR:

_____
González, C.J.

_____

_____
Johnson, J.

_____

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Whitener, J.

No. 99396-3
(Gordon McCloud, J., dissenting)

No. 99396-3

GORDON McCLOUD, J. (dissenting)—The State charged Patrick

Crossguns Sr. with second degree child rape and second degree child molestation

of his daughter, R.G.M. The State also charged two aggravating factors on each

count. The jury heard extensive, highly prejudicial evidence of *uncharged* acts of

sexual misconduct extremely similar to the acts comprising the charged crimes.

The trial court admitted that evidence for several purposes, including that it was

relevant to proving the defendant's "lustful disposition" toward R.G.M.

I agree with the majority that we should abandon the "lustful disposition"

doctrine as incorrect and harmful.[1] But I disagree with its holding that any error in

admitting the challenged evidence to show "lustful disposition" was harmless

because the evidence was admissible for a different ER 404(b) purpose. Actually,

the evidence admitted under the lustful disposition moniker was classic propensity

evidence—and ER 404(b) bars admission of such propensity evidence under any

name.

_____

[1] I also agree with the majority's resolution of the prosecutorial misconduct claim.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 99396-3
(Gordon McCloud, J., dissenting)

In this case, it is certainly true that the so-called lustful disposition evidence may have been relevant and admissible to prove certain charged *aggravating sentencing factors*. But it was not admissible as to any *element* of the crimes charged. And I fear that by broadly stating that evidence of other uncharged crimes against a victim is admissible in cases involving child sexual abuse because it is "part of the crime," without noting the element of "the crime" of which it is a "part," the majority impermissibly changes the elements of the statutes that the legislature wrote.

Defense counsel clearly addressed this distinction between evidence relevant to the elements of the crime charged and evidence relevant only to aggravating sentencing factors in the trial court: the defense moved to bifurcate the trial to exclude that propensity evidence from the jury's decision about the elements of the crime and to admit that evidence only during a separate sentencing phase. The trial court denied that motion and thereby allowed the jury to consider the propensity evidence to prove the elements of the crimes.

I disagree with the majority's decision to uphold that trial court ruling. I don't think that changing the name of propensity evidence from "lustful disposition" to something else cures the problem. As a result, I would affirm the Court of Appeals' decision to reverse the convictions, but on different grounds.

2

No. 99396-3
(Gordon McCloud, J., dissenting)


I therefore respectfully dissent.

FACTS AND PROCEDURAL HISTORY

On September 21, 2016, the State charged Crossguns with one count of

second degree child rape in violation of RCW 9A.44.076(1) and one count of

second degree child molestation in violation of RCW 9A.44.086. Clerk's Papers

(CP) at 1. Both counts named his daughter, R.G.M., as the victim.

After a defense interview with R.G.M., the State moved to amend the

information to allege the aggravating sentencing factors of abuse of trust and

pattern of abuse pursuant to RCW 9.94A.535(3)(g) and (n). CP at 17. On June 19,

2019, the trial court granted the State's motion to amend the information to add the

aggravating factors.[2] CP at 34.

The State then offered extensive testimony about Crossguns' alleged prior

acts. CP at 39-42. This testimony described other acts of sexual abuse by

Crossguns against R.G.M., as well as evidence of acts that were not themselves

criminal but allegedly constituted grooming (e.g., the fact that Crossguns took

R.G.M. on car rides alone). *Id.* at 38-39. The State argued that the evidence was

admissible for several reasons: to prove the charged aggravating circumstances; to

---

[2] The information was amended twice more, once to correct the language used in the aggravating factors, CP at 62, and once to change the date ranges alleged in count I to "on or about between April 1, 2016 and May 31, 2016," CP at 80.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

prove Crossguns' "lustful disposition" toward R.G.M.; and to show Crossguns' "motive, plan, intent, opportunity, absence of mistake, and grooming of [R.G.M.], and as *res gestae* of the case." *Id.* at 42.

The defense timely moved to exclude "all evidence regarding allegations of sexual misconduct not alleged in the charging document." CP at 70. The defense argued that this evidence was inadmissible to prove Crossguns' guilt of the charged crimes because any probative value it might have was drastically outweighed by the "extreme prejudice" that uncharged allegations of similar crimes would cause. 1 Verbatim Report of Proceedings (VRP) (July 16, 2019) at 216; CP at 71-72. Crossguns did not challenge the admissibility of the evidence to prove the charged aggravating factors. CP at 71. Rather, he sought to bifurcate the trial so that the evidence of uncharged sexual abuse would be heard only at the sentencing phase if the jury convicted him. CP at 71-73; 1 VRP (July 15, 2019) at 62-63, (July 16, 2019) at 216-19.

The defense also proposed a limiting instruction telling the jury to consider the uncharged-acts evidence only for "the purpose(s) of evaluating whether the charged conduct was part of an ongoing pattern of sexual abuse and/or involved an abuse of trust." CP at 84.

4

No. 99396-3
(Gordon McCloud, J., dissenting)

The trial court denied the defense motion to bifurcate and rejected the

proposed instruction. 4 VRP (July 22, 2019) at 783-84; CP at 119. It permitted the

State to call R.G.M. and other witnesses to testify about the other alleged acts.

These witnesses testified as described by the majority. Majority at 4-5.

After closing arguments, the trial court gave the following limiting

instruction:

> Certain evidence has been admitted in this case for only limited
> purposes. This evidence consists of evidence the defendant allegedly
> engaged in sexual abuse of [R.G.M.] not charged in the information
> and may be considered by you only for the purpose(s) of determining
> the defendant's intent, plan, motive, opportunity, absence of mistake
> or accident, lustful disposition toward [R.G.M.], [R.G.M.]'s state of
> mind for her delayed disclosure of the alleged abuse, and/or whether
> the charged conduct was part of an ongoing pattern of sexual abuse
> and/or involved an abuse of trust or confidence. You may not consider
> it for any other purpose. Any discussion of the evidence during your
> deliberations must be consistent with this limitation.

CP at 93. The trial court also instructed the jury on the elements of both crimes. CP

at 95 (instruction on elements of second degree child rape), 100 (instruction on

elements of second degree child molestation). It also provided a separate

instruction on the aggravating factors of "abuse . . . of trust" and "ongoing pattern

of sexual abuse." CP at 103.

The jury returned guilty verdicts on both counts. CP at 109, 111. It also

found that the defendant "use[d] his position of trust or confidence to facilitate the

5

No. 99396-3
(Gordon McCloud, J., dissenting)

commission" of both crimes and that both crimes were "part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years old manifested by multiple incidents over a prolonged period of time." CP at 110, 112.

On count I, the court sentenced Crossguns to an indeterminate term of 182 months to life, finding facts to support an exceptional sentence above the range. CP at 175-77. On count II, it imposed a concurrent determinate sentence of 48 months. CP at 177.

Crossguns timely appealed. In relevant part, he argued that the trial court erred by admitting the evidence of uncharged acts of sexual abuse without a basis under ER 404(b). Br. of Appellant at 1-3 (Wash. Ct. App. No. 37079-8-III (2020)).

The Court of Appeals reversed the conviction due to prosecutorial misconduct.[3] The appellate court also addressed the admission of the evidence of prior uncharged acts of sexual misconduct and concluded that the trial court committed no error. *State v. Crossguns*, No. 37079-8-III, slip op. at 11 (Wash. Ct. App. Dec. 8, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/370798_unp.pdf. The court determined that the evidence was relevant and admissible to prove the aggravating factors of

_____

[3] *State v. Crossguns*, No. 37079-8-III, slip op. at 1 (Wash. Ct. App. Dec. 8, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/370798_unp.pdf.

6

No. 99396-3
(Gordon McCloud, J., dissenting)

abuse of trust and pattern of abuse. *Id.* at 16. Additionally, it held that the evidence was admissible to prove guilt under the lustful disposition doctrine. *Id.* It declined to overturn that doctrine because it was bound by decisions of this court. *Id.* It made no determination whether the evidence was admissible for any other purpose. *Id.*

The State petitioned for review on the prosecutorial misconduct issue. The State also argued that this court should affirm the Court of Appeals' holding that the uncharged-acts evidence was admissible. Pet'r/Cross-Resp't's Suppl. Br. at 2. It contended that while the term "lustful disposition" is "anachronistic and may engender confusion," the uncharged-acts evidence was admissible for a permissible purpose under ER 404(b). *Id.* at 1. The State proposed changing the name of the lustful disposition doctrine to "sexual motive," arguing that this captured the true (and, it argued, permissible) purpose for which evidence of prior alleged sexual abuse of the same victim is admissible. *Id.* at 1, 5.

Crossguns conditionally cross petitioned for review to urge this court to abandon the "lustful disposition" doctrine and hold that the uncharged-acts evidence was inadmissible for any of the stated ER 404(b) purposes noted by the trial court. Answer to Pet. and Cross-Pet. (Answer) at 6-8.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ARGUMENT

I.  The trial court erred in admitting the evidence of uncharged acts of sexual abuse for the purpose of showing Crossguns' "lustful disposition" to commit the charged crimes; we should abandon the lustful disposition doctrine because it is incorrect and harmful

I agree that the lustful disposition doctrine is incorrect and harmful for many of the reasons explained by the majority. But the main reason that the doctrine is incorrect and harmful is that it rests on a propensity inference that is categorically barred by our evidence rules—and changing the name of the doctrine doesn't fix that.

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In other words, evidence of prior bad acts cannot be used to show that the defendant had a propensity to commit the charged crime. "There are no exceptions to this rule." *State v. Gresham*, 173 Wn.2d 405, 429, 269 P.3d 207 (2012).

Evidence of prior crimes, wrongs, or acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[4] ER 404(b). Admissibility

---

[4] "Though the other purposes are sometimes referred to as exceptions, this is simply legal shorthand for 'other purposes.'" *Gresham*, 173 Wn.2d at 421.

8

No. 99396-3
(Gordon McCloud, J., dissenting)

for such other purpose depends on "relevance and the balancing of its probative value and danger of unfair prejudice" under ER 403. *Gresham*, 173 Wn.2d at 420. Even then, the evidence "*remains inadmissible* for the purpose of demonstrating the person's character and *action in conformity with that character.*" *Id*. at 429 (emphasis added).

The rule barring the use of propensity evidence is "fundamental to American jurisprudence." *United States v. Foskey*, 204 U.S. App. D.C. 245, 636 F.2d 517, 523 (1980). The rule recognizes that such evidence inherently poses a substantial risk of unfair prejudice. Specifically, propensity evidence poses the risks that "a jury will convict for crimes other than those charged"[5] or will "generaliz[e] a defendant's earlier bad act into bad character and tak[e] that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." *Old Chief v. United States*, 519 U.S. 172, 180-81, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

Indeed, courts have long recognized the risk that evidence suggesting a defendant has a criminal propensity will lead the jury to conclude that the person most likely committed the charged crime:

---

[5] *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) (noting that these risks create "a prejudicial effect that outweighs ordinary relevance").

9

No. 99396-3
(Gordon McCloud, J., dissenting)

> It would be easier to believe a person guilty of one crime if it was known that he had committed another of a similar character, or, indeed, of any character; but the injustice of such a rule in courts of justice is apparent. It would lead to convictions, upon the particular charge made, by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one.

*People v. Molineux*, 168 N.Y. 264, 292, 61 N.E. 286 (1901) (quoting *Coleman v. People*, 55 N.Y. 81, 90 (1873)); *see also Michelson v. United States*, 335 U.S. 469, 476, 69 S. Ct. 213, 93 L. Ed. 168 (1948) ("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."); *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982).

The risk of unfair prejudice inherent in the admission of propensity evidence only increases where, as here, the accused is a member of a marginalized group—because such evidence can tap into harmful societal stereotypes and implicit racial and ethnic bias that may exist in jury members' minds. *See* Aviva Orenstein, Essay, *Propensity or Stereotype?: A Misguided Evidence Experiment in Indian Country*, 19 CORNELL J.L. & PUB. POL'Y 173, 188 (2009) (discussing Chris Chambers Goodman, *The Color of Our Character: Confronting The Racial Character of Rule 404(b) Evidence*, 25 L. & INEQ. 1, 57 (2007)).

10

No. 99396-3
(Gordon McCloud, J., dissenting)

From its inception, the lustful disposition doctrine has been explicitly based on the idea that a defendant's prior acts show their propensity to commit sex crimes against a particular victim. *E.g.*, *State v. Wood*, 33 Wash. 290, 292, 74 P. 380 (1903) ("'It is more probable that incestuous intercourse will take place between persons who have conducted themselves with indecent familiarity than between those whose behavior has been modest and decorous.'" (quoting *State v. Markins*, 95 Ind. 464, 465 (1884)); *State v. Thorne*, 43 Wn.2d 47, 60, 260 P.2d 331 (1953) ("Such evidence is admitted for the purpose of showing the lustful inclination of the defendant toward the offended female, which in turn makes it more probable that the defendant committed the offense charged."); *State v. Ferguson*, 100 Wn.2d 131, 134, 667 P.2d 68 (1983); *State v. Fischer*, 57 Wn.2d 262, 264, 356 P.2d 983 (1960). Indeed, at oral argument the State conceded that the "phrase 'lustful disposition' is problematic because *it sounds like propensity evidence*" and gives rise to a "*knee-jerk propensity association.*"[6] The doctrine is thus irreconcilable with ER 404(b)'s categorical bar

---

[6] Wash. Supreme Court oral argument, *State v. Crossguns*, No. 99396-3 (June 22, 2021), at 10 min., 28 sec., *video recording by* TVW, https://www.tvw.org/watch/?eventID=2021061148 (emphasis added).

11

No. 99396-3
(Gordon McCloud, J., dissenting)

on the use of evidence of prior crimes, wrongs, or acts to support a propensity

inference.[7]

Because the lustful disposition doctrine conflicts directly with the

categorical bar on propensity evidence expressed in ER 404(b), it is incorrect and

harmful. It also reinforces incorrect, harmful, and anachronistic assumptions about

_____

[7] The majority tries to cast *Thorne*'s definition of the lustful disposition doctrine as an outlier, citing that decision to show that our precedent has "occasionally mischaracterized" the purpose of evidence admitted under the lustful disposition doctrine. Majority at 8. The majority then cites numerous cases that relied on *Thorne*, but claims these cases did not "carefully scrutinize[]" *Thorne*'s doctrine. *Id.* I respectfully disagree. In all of the decisions the majority lists as citing *Thorne* "to describe the term 'lustful disposition,'" *id.*, the evidence admitted under the term "lustful disposition" was admitted for the propensity reason articulated in *Thorne*: "showing the lustful inclination of the defendant toward the offended female . . . makes it more probable that the defendant committed the offense charged." *Thorne*, 43 Wn.2d at 60. The majority's position seems to be that we should abandon the label "lustful disposition" because that label "appears to allow propensity evidence," but that properly understood, most evidence admitted under this label was actually admitted for another, permissible purpose. Majority at 8, 10. Again, I respectfully disagree.  To be sure, some lustful disposition decisions have articulated reasons in addition to "lustful disposition" that support admission of certain evidence.  But all of the decisions cited by the majority also rely on (and most quote) *Thorne*, with its clear statement that the propensity inference actually forms the basis for the entire "lustful disposition" doctrine. *See* majority at 8 (collecting cases citing *Thorne*). In other words, *Thorne* holds that the propensity inference is inherent in the lustful disposition doctrine, the decisions cited by the majority as relying on *Thorne* all rely on that holding, and the evidence admitted in those cases pursuant to *Thorne*'s holding *was* admitted for an impermissible propensity purpose. That is the primary reason that we should abandon the doctrine as incorrect and harmful—not just the outdated wording of the term "lustful disposition."

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 99396-3
(Gordon McCloud, J., dissenting)

the nature of sexual crimes, i.e., that victims of such crimes are exclusively women and that perpetrators are exclusively men. *E.g.*, *Thorne*, 43 Wn.2d at 60. I therefore agree that the doctrine should be abandoned.

But the majority does not abandon the doctrine at all. The majority just changes its name. That solves nothing. I therefore disagree with the remainder of the majority's reasoning and conclusions on the admissibility of the challenged evidence for another purpose.

II.  <u>The evidence of uncharged acts of sexual misconduct was not admissible to prove Crossguns committed the charged crimes</u>

At trial, Crossguns opposed the admission of the evidence of prior sexual misconduct for any purpose except for the purpose of proving the charged aggravating factors. CP at 70-73. But the trial court admitted the evidence and denied Crossguns' motion to bifurcate. 1 VRP (July 16, 2019) at 229. It conducted the on-the-record analysis required before admitting ER 404(b) evidence under which the court must "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing *State*

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995)); *see* 1 VRP (July 16, 2019) at 226-27.

Under prong two, the purpose for which the evidence is proffered, the trial court said, "[T]he main factor from this Court's perspective is the lustful disposition towards [R.G.M.] that is exhibited," but the court continued that the evidence was also admissible for purposes of "res gestae . . . motive and intent and plan and opportunity to groom the victim under these circumstances, as well as the last factor of absence of mistake or accident." 1 VRP (July 16, 2019) at 227. At trial, on appeal, and before this court, Crossguns continued to challenge the admission of the evidence for these purposes. 1 VRP at 62-64, 216-19; Br. of Appellant at 10-32 (Wash. Ct. App. No. 37079-8-III (2020)); Answer at 9 & n.3; Suppl. Br. of Resp't at 10 & n.18.

The majority states, without analysis, that the evidence of uncharged crimes was properly admitted for these purposes. Majority at 14. But the majority actually decides the case by determining that the evidence was admissible for a different purpose, one not noted by the trial court—to demonstrate Crossguns' manipulation of relationships of trust with children for his own gratification. *Id.* at 13. That, however, is an aggravating factor—not an element of the charged crimes. And the

14

No. 99396-3
(Gordon McCloud, J., dissenting)

majority's resolution of the case based on that error ends up approving of lustful propensity evidence by calling it a different name.

> A. The majority's theory of the proper purpose for which the challenged evidence was admitted is simply the lustful disposition doctrine by another name

As noted above, the majority "abandon[s] the term 'lustful disposition'" but holds that Crossguns' prior sexual misconduct against R.G.M. was admissible for another purpose: to demonstrate his manipulation of trust for his own gratification. Majority at 15. But while the majority may abandon the *term* "lustful disposition," it adheres to the impermissible propensity inference upon which the whole doctrine is based.

Under the lustful disposition doctrine, evidence of prior sexual misconduct is admissible to show that the defendant had a "lustful inclination" toward the victim because that made it "more probable that the defendant committed the offense charged." *Thorne*, 43 Wn.2d at 60. Under the majority's reasoning, evidence of prior sexual misconduct is admissible to show that the defendant had a tendency to manipulate relationships of trust with children for the defendant's own gratification because that makes it more probable that the defendant committed the offense charged. Majority at 13. This just replaces the outdated term "lustful disposition" with a more contemporary descriptor.

15

No. 99396-3
(Gordon McCloud, J., dissenting)

The majority attempts to argue that its "manipulation of trust" reason does not rely on a propensity inference, but its analysis is unconvincing. That analysis also raises numerous additional issues that the majority leaves unaddressed, which we turn to now.

> B. The majority's theory of the proper purpose for which the challenged evidence was admitted conflicts with our precedent and the plain language of the relevant statutes

The majority asserts that evidence of prior uncharged sexual misconduct against the victim may be "admissible as part of the crime itself." Majority at 13, 19. But the majority fails to identify the element that is "part of the crime itself" to which this evidence relates. As far as I can tell, there is none: abuse of position of trust is an aggravating factor, not an element. And of course, just because a piece of evidence is potentially relevant does not make it automatically admissible.[8] *See* ER 403; ER 404(b); *Gresham*, 173 Wn.2d at 420.

---

[8] The majority's "part of the crime itself" language also conflates the potential *relevance* of such misconduct with its admissibility, without mentioning ER 403's limitations on admission of unfairly prejudicial evidence. ER 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," among other considerations. And "[a]n ER 403 analysis must be applied to facts on a case-by-case basis." *State v. Cohen*, 125 Wn. App. 220, 226, 104 P.3d 70 (2005) (citing 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 403.2, at 351 (4th ed. 1999)); *see also Gresham*, 173 Wn.2d at 420 (admissibility of evidence under ER 404(b) for an "other purpose" depends on "relevance and the balancing of its probative value and danger of unfair prejudice" under ER 403). The majority fails to consider the high risk of unfair

16

No. 99396-3
(Gordon McCloud, J., dissenting)

Instead of identifying the statutory element that is "part of the crime itself" to which this evidence relates, the majority suggests that two nonstatutory factors—an accused's position of trust in relation to the victim and their manipulation of that trust for their own gratification—should actually be considered elements of all sex crimes involving children, even though the legislature never listed them. I disagree.

First, there are no such statutory elements. It remains unclear throughout the opinion which crime or crimes the majority is referring to for its contrary conclusion. For example, at one point the majority broadly states that "due to the nature of the crime of rape and of *child sexual abuse*, the evidence of other uncharged sexual misconduct may be admissible as part of the crime itself." Majority at 13 (emphasis added), 19 (referring to "the crime of child sexual assault"). But Crossguns was not charged with "the crime of child sexual assault"—he was charged specifically under RCW 9A.44.076(1) and RCW 9A.44.086(1).

---

prejudice that is posed by admission of evidence of prior sexual misconduct in a sex crime case—a risk we have repeatedly warned requires "careful and methodical consideration" by courts. *Saltarelli*, 98 Wn.2d at 363; *see infra* at Section II.C.

17

No. 99396-3
(Gordon McCloud, J., dissenting)

The majority fails to examine the language of those two statutes. But, in fact, neither one requires the State to prove that an accused occupied a position of trust in relation to the victim or manipulated that trust for their own gratification.[9]

Instead, in this case, the State alleged the *aggravating factor* that "[t]he defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." RCW 9.94A.535(3)(n). The majority's phrasing conflates this aggravating factor—which Crossguns sought to try in a separate, bifurcated proceeding—with the elements of the underlying charged crimes. This erroneously suggests that there are additional, nonstatutory elements of the crimes with which Crossguns was charged (or to any crime involving child sexual abuse).

By asserting that prior acts of sexual assault are "part of the crime itself," the majority reads into the statutes defining second degree child rape and second degree child molestation elements that the legislature omitted. The judicial branch

---

[9] *See* RCW 9A.44.076(1) ("A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim."), .086(1) ("A person is guilty of child molestation in the second degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim.").

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

can't do that. *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

In sum, the trial court erred in admitting challenged evidence to show Crossguns' lustful disposition because that doctrine relies on an impermissible propensity inference. But the "other purpose" for admitting the evidence that the majority describes rests on the same impermissible propensity inference. And the majority's attempt to make prior misconduct "part of the same crime" impermissibly rewrites the elements of the statutes charged.

> C. The trial court erred in admitting the challenged evidence to prove Crossguns' guilt of the charged crimes (as opposed to the aggravating factors) and in denying his motion to bifurcate

Crossguns agreed that the evidence of prior uncharged acts of sexual misconduct was relevant and admissible as to the charged aggravating factors. CP at 71. But he argued that it was inadmissible with regard to the charged crimes. As discussed above, he argued that admitting the evidence to show lustful disposition violated the ban on propensity evidence. Answer at 13-17. He also argued at length that the evidence was logically irrelevant to any "other purpose" for which it was admitted with regard to the charged crimes, and even if it were logically relevant, it was inadmissible because it was so overwhelmingly prejudicial as to his guilt. Br. of Appellant at 10-29 (Wash. Ct. App. No. 37079-8-III (2020)).

19

No. 99396-3
(Gordon McCloud, J., dissenting)

Only relevant evidence is admissible. ER 402. There are two components to relevance: logical and legal relevance. *State v. Vazquez*, 198 Wn.2d 239, 255-57, 494 P.3d 424 (2021). Evidence is logically relevant if it tends to make a material fact more or less likely than it would be without the evidence. *Id.*; ER 401. But evidence is only "'*legally* relevant if its probative value outweighs its prejudicial effect under ER 403.'" *Vazquez*, 198 Wn.2d at 257 (emphasis added) (quoting *State v. Thomas*, 68 Wn. App. 268, 273, 843 P.2d 540 (1992) (citing *Saltarelli*, 98 Wn.2d at 363)); *accord Gresham*, 173 Wn.2d at 421.

Crossguns is probably right that the evidence of prior uncharged sexual abuse was not logically relevant to show "intent, plan, motive, opportunity, absence of mistake or accident, lustful disposition toward [R.G.M.], [R.G.M.]'s state of mind for her delayed disclosure of the alleged abuse." CP at 93. *See* Br. of Appellant at 10-29 (Wash. Ct. App. No. 37079-8-III (2020)) (making these arguments at length). But even if the evidence were logically relevant, it was not legally relevant because any possible probative value it had was drastically outweighed by its unfairly prejudicial effect.

This court has repeatedly recognized that the risk of unfair prejudice "'reache[s] its loftiest peak'" when evidence of uncharged sexual misconduct is introduced in sex crime cases. *Saltarelli*, 98 Wn.2d at 364 (quoting M.C. Slough &

20

No. 99396-3
(Gordon McCloud, J., dissenting)

J. William Knightly, *Other Vices, Other Crimes*, 41 IOWA L. REV 325, 334 (1956));

*see also State v. Gower*, 179 Wn.2d 851, 857, 321 P.3d 1178 (2014);

*Gresham*, 173 Wn.2d at 433.[10] Recognizing this risk, we have explained that

courts should not use the "other purposes" list under ER 404(b) as "'magic

passwords whose mere incantation will open wide the courtroom doors to whatever

evidence may be offered in their names.'" *Saltarelli*, 98 Wn.2d at 364 (quoting

*United States v. Goodwin*, 492 F.2d 1141, 1155 (5th Cir. 1974)). Instead, "[a]

careful and methodical consideration of relevance, and an intelligent weighing of

potential prejudice against probative value is particularly important in sex cases,

where the prejudice potential of prior acts is at its highest." *Id*. at 363. Yet the

majority fails to discuss the potential prejudicial effect of the challenged evidence

whatsoever.

---

[10] Psychological evidence "reinforces the proposition that the accused faces insurmountable prejudice when the jury learns of his prior sex crimes." Tamara Rice Lave & Aviva Orenstein, *Empirical Fallacies of Evidence Law: A Critical Look at the Admission of Prior Sex Crimes*, 81 U. CIN. L. REV. 795, 803 (2013) (discussing Joseph Carroll, *Crystal Meth, Child Molestation Top Crime Concerns*, GALLUP (May 3, 2005), http://www.gallup.com/poll/16123/crystal-meth-child-molestation-top-crime-concerns.aspx)); *see also* Goodman, *supra*, at 1, 6, 7 n.25 (explaining that "[j]uror studies have determined that jurors pay more attention to bad character evidence than to good character evidence") (citing MIGUEL MÉNDEZ, EVIDENCE: THE CALIFORNIA CODE AND THE FEDERAL RULES 57-59 (3d ed. 2004)).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

To address this high risk of prejudice, Crossguns moved to bifurcate the trial. Bifurcating the trial would have ensured that the jury received the evidence of uncharged sexual misconduct only after conviction, in order to prove the aggravating factors. This solution was within the court's discretion, and the trial court erred in denying that motion.

The trial court has broad authority to control "the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of the truth." ER 611(a); *see also, e.g.*, *State v. Johnson*, 77 Wn.2d 423, 426, 462 P.2d 933 (1969). This includes the authority to bifurcate a trial to protect a defendant's constitutional rights. *State v. Monschke*, 133 Wn. App. 313, 334-35, 135 P.3d 966 (2006) (citing *State v. Kelley*, 64 Wn. App. 755, 762, 828 P.2d 1106 (1992)); *see also State v. Jeppesen,* 55 Wn. App. 231, 236-38, 776 P.2d 1372 (1989); 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.02 cmt. at 860 (5th ed. 2021) ("In some cases, evidentiary rules, constitutional concerns, and practical considerations may require the court to bifurcate a trial despite a statutory presumption to the contrary.").

"Bifurcation is inappropriate if a unitary trial would not significantly prejudice the defendant or if there is a substantial overlap between evidence

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

relevant to the proposed separate proceedings." *Monschke*, 133 Wn. App. at 335

(citing *Jeppesen*, 55 Wn. App. at 237). Here, as discussed, the prior acts evidence

posed an extremely high risk of prejudice with regard to Crossguns' guilt of the

charged crimes, making it inadmissible for that purpose. Because the evidence was

inadmissible for any of the purposes for which the court admitted it *except* for the

purpose of proving the aggravating factors, there would be no substantial overlap

between evidence relevant to the proposed separate proceedings. Further, neither

aggravating factor was an element of the charged crimes, so there was no basis to

deny the motion to bifurcate on that ground. *Cf. State v. Roswell*, 165 Wn.2d 186,

198, 196 P.3d 705 (2008) (not error to admit evidence of prior conviction where

fact of prior conviction was *element* of charged crime).

The penalty for conviction of the rape charge is an indeterminate life

sentence—close to the harshest available in our state. And the evidence rules are

strict about the admission of evidence of prior convictions—*especially* convictions

for crimes similar to the crime charged. *See* ER 609(b); *Old Chief*, 519 U.S. at 185.

It seems absurd that highly prejudicial evidence of prior allegations of unproven

similar crimes should be easier to admit than evidence of criminal convictions. *See*

*Old Chief*, 519 U.S. at 185; *Vazquez*, 198 Wn.2d at 255.

No. 99396-3
(Gordon McCloud, J., dissenting)

The trial court therefore abused its discretion in denying Crossguns' motion to bifurcate the trial and his motion to exclude the lustful propensity evidence.

III.    <u>Admitting the challenged evidence to show guilt resulted in a confusing jury instruction that strongly invited the jury to make a propensity inference</u>

Intertwined with the issue of admissibility is Crossguns' challenge to the limiting instruction given to the jury. The majority notes only that Crossguns cross petitioned on the "lustful disposition" issue and does not address this important issue concerning the prejudicial effect of admitting this evidence, even though Crossguns raised and argues it in his cross petition and we granted review of it. Majority at 6; Answer at 18-19; Order, No. 99396-3 (Wash. Apr. 4, 2021).

Crossguns argues that the limiting instruction was wrong because it directed the jury to consider the evidence for propensity purposes—i.e., to show "lustful disposition." Answer at 19. Crossguns also argues that the limiting instruction was defective because it did not unambiguously inform the jury that the evidence could not be used to draw a propensity inference. Suppl. Br. of Resp't at 12.

Crossguns is correct. "[I]n the context of ER 404(b) limiting instructions, once a criminal defendant requests a limiting instruction, the trial court has a duty to correctly instruct the jury." *Gresham*, 173 Wn.2d at 424. A correct limiting

24

No. 99396-3
(Gordon McCloud, J., dissenting)

instruction must make clear that evidence may not be used to support a propensity inference. *Id*. at 423-24 (citing *Lough*, 125 Wn.2d at 864).

As discussed in Part I, the lustful disposition doctrine rests on an impermissible propensity inference. Thus, when the jury was instructed that it *could* consider the evidence for "lustful disposition" purposes, the court directly invited the jury to make a propensity inference. The State admitted as much in both its briefs and oral argument: the name "lustful disposition" gives rise to a "knee-jerk propensity association." *See supra* n.6. The majority, too, concedes that one reason that the label "lustful disposition" is harmful is because "it appears to allow propensity evidence" to some extent. Majority at 10. And the limiting instruction given did not make clear that the evidence could *not* be considered for propensity purposes. *Cf. State v. Arredondo*, 188 Wn.2d 244, 264, 394 P.3d 348 (2017) (prejudicial effect of prior acts evidence did not outweigh probative value where the court gave "repeated limiting instructions . . . that the past crime cannot be used to show a propensity to commit the current crime").

IV. The error in admitting the evidence was not harmless, and reversal is required

The error in admitting the evidence for the purpose of proving Crossguns' guilt was not harmless. We analyze the erroneous admission of evidence in

25

No. 99396-3
(Gordon McCloud, J., dissenting)

violation of ER 404(b) under the nonconstitutional harmless error standard, asking whether, "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984)); *Gresham*, 173 Wn.2d at 433.

This case was basically a credibility contest between Crossguns, on the one hand, and the alleged child victim, on the other hand. *See* 3 VRP (July 17, 2019) at 567-622, (July 22, 2019) 636-57 (testimony of R.G.M.), 683-750 (testimony of Crossguns); 4 VRP (July 22, 2019) at 753-66, 771-74 (testimony of Crossguns). We are left with the facts that the jury was presented with unfairly prejudicial, and therefore legally irrelevant, evidence with regard to Crossguns' charged crimes; that the limiting instruction specifically told the jury it could consider the evidence for "lustful disposition" purposes, a phrase that the State acknowledges gives rise to a "knee-jerk propensity inference"; that the limiting instruction did not restrict the jury's consideration of the past acts evidence to aggravating factors, the only aspect of the charges to which it may have been legally relevant; and that the prosecutor repeatedly invoked the past acts evidence in closing argument. 4 VRP (July 22, 2019) at 809-38 (State's closing argument).

No. 99396-3
(Gordon McCloud, J., dissenting)

On this record, we cannot conclude that the jury must have considered the evidence for a nonpropensity purpose. *See* Answer at 19; *cf. Yates v. United States*, 354 U.S. 298, 312, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957) (where a jury instruction provides both legally permissible bases and a legally erroneous basis for conviction and it is impossible to tell from the verdict which basis the jury relied on, the conviction cannot stand), *overruled in part on other grounds by Burks v. United States*, 437 U.S. 1, 8, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). And we cannot conclude that the error in admitting the evidence to prove Crossguns' guilt was harmless, where the evidence was profoundly prejudicial. Without the propensity evidence (and arguments and instruction emphasizing it), it is reasonably probable that the outcome of the trial would have been materially affected. *See, e.g., State v. Slocum*, 183 Wn. App. 438, 457, 333 P.3d 541 (2014) (where past acts evidence that bolstered witness' credibility and impugned defendant's credibility was inadmissible for a proper ER 404(b) purpose, its admission was not harmless). The convictions should be reversed.

For these reasons, I respectfully dissent.

_____
Gordon McCloud, J.

_____
Stephens, J.

27