IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 81404-4-I |
| v. | DIVISION ONE |
| ROBERT JAMES WILSON, | ORDER DENYING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |
| Appellant. | |

The Respondent, State of Washington, has filed a motion for reconsideration of the opinion filed on October 17, 2022. Appellant Robert Wilson has filed an answer. The court has determined that the motion shall be denied and that the opinion filed on October 17, 2022, shall be withdrawn and a substitute opinion be filed. Now, therefore it is hereby

ORDERED that the motion for reconsideration is denied; it is further

ORDERED that the opinion filed on October 17, 2022, is withdrawn and a substitute opinion shall be filed.

_____
Chung, J.

Brummm, T          Duyn, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>          v.<br><br>ROBERT JAMES WILSON,<br><br>          Appellant. | No. 81404-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Robert Wilson appeals his conviction for first degree child molestation. He argues that the trial court erred by admitting evidence of other uncharged acts to show a "lustful disposition" toward the victim. Wilson also contends that the trial court erred by admitting child hearsay evidence when the victim was an adult at the time of trial. We hold that the evidence of the two subsequent, uncharged incidents involving the same victim was improperly admitted propensity evidence and that, had the error not occurred, it is reasonably probable that the outcome of the trial would have been materially affected. We reverse Wilson's conviction and remand for a new trial.

FACTS

R.B.[1] grew up in Lake Stevens, Washington. She lived in a home with her mother, Brenda,[2] her grandmother Betty, and Wilson, her step-grandfather. In 2007, when R.B.

---

[1] R.B. was 18 years old at the time of trial; however, because the events occurred when she was between 7 and 17 years old, we maintain use of her initials for privacy throughout.

[2] For clarity, we refer to Brenda Wilson and Betty Wilson by their first names. We intend no disrespect.

was approximately seven years old, she disclosed to Brenda and Betty that Wilson had sexually abused her. She told them that when Wilson took her outside their house to watch a meteor shower, he put his hand inside her shirt, touched her nipples, then put his hands inside her pants under her underwear and rubbed her clitoris. Brenda and Betty confronted Wilson and threatened to call the police or kill him. Brenda did not call the police because she "didn't want anybody involved." She put a lock on R.B.'s bedroom door and instructed her daughter never to be alone with Wilson.

In December 2018, R.B. asked Wilson to apply a pain-relieving cream to her back. She gave him permission to unhook her bra to rub in the medicine. R.B.'s mother was in the room. Later that night, R.B. experienced more pain and asked Wilson to reapply the cream. This time, the two were alone in Wilson's bedroom. According to R.B., Wilson unhooked her bra, touched the sides of her breasts, and tried to put his hands underneath them. R.B. told him to stop. He tried to slide his hands down her pants, but she again told him to stop. R.B. told her mother, who took no action. She also reported the incident to her father, with whom she had recently reconnected after many years. Her father advised her to call the police. Later that week, while R.B. was staying at her aunt's house, she contacted the police to report that she had been sexually molested by her grandfather.

Based on R.B.'s allegations about Wilson's actions in 2007 and 2018, the State charged Wilson with first degree child molestation (Count 1) and fourth degree assault (domestic violence) (Count 2). At trial, the State sought to introduce evidence of two other incidents that occurred in the years between the events charged in Counts 1 and 2.

The "wrist grabbing" incident occurred in November 2017, shortly after Betty suffered a stroke. Wilson asked R.B. for a hug before bed, then grabbed her wrist and

invited her to go to his room with him. R.B. pulled away and reported the incident to her mother. Brenda told R.B. to "stay away" from Wilson.

In August 2018, Wilson disciplined R.B. by taking away her cell phone and tablet. R.B. testified that he offered to return her electronics if she let him "feel her up" and "do whatever he wanted to her." R.B. agreed in order to get her belongings back, but did not actually let Wilson touch her. She again told Brenda, who instructed her not to let Wilson touch her, to stay away from him, and to sleep with her door locked.

Wilson's counsel objected that the evidence of both the "wrist grabbing" and "electronics" incidents was improper propensity evidence. After an ER 404(b) hearing at which the court heard testimony from R.B., Brenda, and Betty, the court determined that the evidence was admissible to prove "lustful disposition"—i.e., that the 2007 child molestation was committed for the purpose of sexual gratification—and to prove that the 2017 assault was sexually motivated. At trial, the court instructed the jury two separate times—directly after R.B. testified about each event—that the evidence was to be used only for the purpose of considering whether the charged offenses were committed for the purpose of sexual gratification as to Count 1 and/or sexual motivation as to Count 2, and that they could not consider this evidence for any other purpose. The jury received the same limiting instruction in writing before deliberations.

Wilson also moved pretrial to exclude statements R.B. made when she was seven to her mother and grandmother about the alleged child molestation. During a hearing on the evidence, R.B., Brenda, Betty, and her aunt all testified regarding these child hearsay statements. The court held that the statements were admissible.

3

After the trial, the jury convicted Wilson on the child molestation charge, but could not reach a verdict on the domestic assault, resulting in the dismissal of Count 2.

Wilson appeals.

ANALYSIS

Wilson raises two issues on appeal: first, that the trial court erred by admitting evidence of later uncharged incidents to show that he had a "lustful disposition" towards the victim, and second, that the trial court erred by admitting child hearsay statements that the victim, who was 18 years old at the time of trial, made shortly after the first alleged incident of molestation when she was 7 years old.

We review the trial court's decision to admit or exclude evidence for abuse of discretion. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (citing State v. Lough, 125 Wn.2d 847, 856, 889 P.2d 487 (1995)). "There is an abuse of discretion when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons." State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997) (citing State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

I.     Admissibility of Uncharged Acts

Wilson challenges the testimony about the uncharged "wrist grabbing" and "electronics" incidents as inadmissible "lustful disposition" evidence. Wilson contends this evidence had no relevance other than to show propensity to engage in the charged criminal acts and that it was unduly prejudicial. After this appeal was filed, our Supreme Court rejected the term "lustful disposition" and held that "it may no longer be cited as a distinct purpose for admitting evidence under ER 404(b)." State v. Crossguns, 199 Wn.2d 282, 290, 505 P.3d 529 (2022). However, the Crossguns court further stated that

4

even when courts have erroneously purported to rely on this doctrine, the evidence in question may still be admissible for some other, proper purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. at 285-86. Thus, the proper inquiry is whether the testimony regarding the two subsequent, uncharged incidents was otherwise admissible under ER 404(b).

"ER 404(b) is a categorical bar to admission of evidence [of a prior bad act] for the purpose of proving a person's character and showing that the person acted in conformity with that character." State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012) (citing State v. Saltarelli, 98 Wn.2d 358, 362, 655 P.2d 697 (1982)). Thus, "[a] trial court must always begin with the presumption that evidence of prior bad acts is inadmissible." DeVincentis, 150 Wn.2d at 17. To determine whether such evidence is admissible for a proper, non-propensity purpose, the trial court must: (1) find by a preponderance of the evidence that the alleged misconduct occurred, (2) identify the purpose for which the evidence is being introduced, (3) determine whether the evidence is relevant to prove any element of the charged crime, and (4) weigh the probative value of the evidence against its prejudicial effect. State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). This analysis must be conducted on the record, and if the evidence is admitted, then the court "must provide the jury with a limiting instruction specifying the purposes of the evidence." State v. McCreven, 170 Wn. App. 444, 458, 284 P.3d 793 (2012) (internal quotations omitted). "In doubtful cases, the evidence should be excluded." Thang, 145 Wn.2d at 642.

Here, the court conducted an ER 404(b) hearing prior to the trial. Regarding the first prong of the inquiry, the court noted that while there were questions about the

5

victim's credibility that would be addressed by defense counsel at trial, the victim's disclosures were made close in time to the alleged misconduct and there was corroborating evidence for each. Therefore, the court found by a preponderance of the evidence that both the "wrist grabbing" and the "electronics" incidents occurred. As to the second prong of the inquiry—the purpose for which the evidence is being introduced—the court ruled that Wilson's attempt to pull R.B. into his bedroom was "strong evidence of lustful disposition" and "that is a purpose for which courts have routinely said that such evidence must be admitted.[3]

Given that the court in Crossguns subsequently made clear that "lustful disposition" is not a proper purpose for admitting evidence, the State now argues that the evidence of Wilson's actions in 2017 and 2018 was also admissible as proof of motive or intent, or was otherwise necessary because each of the charged crimes required proof that the purpose was sexual gratification. "[W]e [may] consider bases mentioned by the trial court as well as other proper bases on which the trial court's admission of evidence may be sustained." Powell, 126 Wn.2d at 259. But here, the evidence of uncharged acts was not admissible for any proper purpose.

Child molestation "necessarily involves a purposeful or intentional and unlawful or unprivileged touching." State v. Stevens, 127 Wn. App. 269, 277, 110 P.3d 1179 (2005), aff'd, 158 Wn.2d 304, 143 P.3d 817 (2006). Sexual gratification is not an element of child molestation in the first degree; rather, it is a definition that clarifies the meaning of the element "sexual contact." State v. Lorenz, 152 Wn.2d 22, 36, 93 P.3d

---

[3] Evidence of uncharged acts may be admissible under ER 404(b) whether they occur before or after the charged acts. State v. Gonzales, 1 Wn. App. 2d 809, 819, 408 P.3d 376 (2017).

133 (2004).[4] The sex offenses statute defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(13). Contact directly to the genital organs or breasts is, as a matter of law, contact with a "sexual or intimate part." In re Welfare of Adams, 24 Wn. App. 517, 519, 601 P.2d 995 (1979). Thus, intent is relevant to the crime of child molestation when it is necessary to prove the element of sexual contact.[5] Stevens, 158 Wn.2d at 310.

In offering evidence of other bad acts to prove intent, the State must show "a logical theory, other than propensity, demonstrating how the prior acts connect to the intent required to commit the charged offense." State v. Wade, 98 Wn. App. 328, 334, 989 P.2d 576 (1999). However, stating that a collateral act is evidence of a party's intent "is not a magic [password] whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in [its name]." Id. at 334 (quoting Saltarelli, 98 Wn.2d at 362). Here, the State claims the wrist-grabbing and electronics incidents "provided reasons why the defendant did not act on his sexual desire during the period of approximately nine years between the molestation and the wrist-grabbing incident." According to the State, "[a] jury could reasonably infer that the defendant's inaction during the intervening period did not result from his lack of desire, but from his fear of the consequences." While the State attempts to describe this as evidence of intent, the focus on showing that Wilson still had the desire for sexual contact with R.B. invokes

---

[4] While Lorenz involved the prior sex offenses statute, former RCW 9A.44.010(2) (2000), Lorenz, 152 Wn.2d at 22, the definition of "sexual contact" remains unchanged in the current statute, RCW 9A.44.010(13).

[5] Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification. State v. Powell, 62 Wn. App. 914, 918, 816 P.2d 86 (1991) (citations omitted).

the idea of "lustful disposition" that was rejected in <u>Crossguns</u>. Moreover, the court's ruling about the purpose of the evidence was clear:

> [L]ustful disposition . . . is the purpose for which this is offered. Obviously, invitations to – or requests for sexual contact . . . would be strong evidence of lustful disposition. . . . In this case that evidence is relevant to prove that the assault was for purposes of sexual motivation and/or that the child molestation – or the touching was for purposes of sexual gratification.

This case differs from <u>Crossguns</u>, where the court had ruled at the ER 404(b) hearing that the evidence of uncharged sexual abuse was admissible for multiple other purposes, to demonstrate the defendant's "intent, plan, motive, opportunity, absence of mistake or accident, lustful disposition toward [the victim], and as *res gestae* in the case to show [the victim's] state of mind for her delayed disclosure." Also, the evidence in <u>Crossguns</u> was admitted to prove the aggravating factors that defendant used a position of trust and that the offenses were part of an ongoing pattern of sexual abuse. <u>Id.</u> at 296.

Here, by contrast, the trial court identified no additional reasons for admitting the evidence beyond "lustful disposition," even though the court used different words, stating that the uncharged incidents were relevant to prove the charged incidents were "for purposes of sexual motivation and/or . . . purposes of sexual gratification." The State urges us to consider the uncharged acts as evidence of motive. ER 404(b) expressly states that motive is a permissible purpose for admission of uncharged incidents.[6] "' "Motive" is said to be the moving course, the impulse, the desire that induces criminal action on part of the accused; it is distinguished from "intent" which is

---

[6] ER 404(b) states that "[e]vidence of other crimes, wrongs, or acts . . . may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

the purpose or design with which the act is done, the purpose to make the means adopted effective.'" State v. Powell, 126 Wn.2d 244, 260, 893 P.2d 615 (1995) (quoting BLACK'S LAW DICTIONARY 1014 (6th rev. ed. 1990)). Given this definition, the incidents at issue are, at best, only minimally probative of motive. R.B. was age seven at the time of the charged incident. She was approximately age 17 at the time of the uncharged incidents. It is not readily apparent how evidence of Wilson's alleged conduct toward a 17-year-old makes it more likely that Wilson had a similar impulse or desire, ten years earlier, to engage in the charged conduct with a seven-year-old. Incidents that occurred ten years after the crime alleged could not help establish "the moving course, the impulse, the desire that induce[d]" Wilson to commit acts in the past.

Moreover, even if this evidence was of some minimal probative value, it was unduly prejudicial. "[A]n intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest." Saltarelli, 98 Wn.2d at 363. The uncharged incidents were proffered to demonstrate that Wilson acted on his longstanding sexual desire for R.B. in the two later uncharged incidents. But this purported purpose is nothing more than a recasting of the prohibited "lustful disposition" rationale for admission. It is not the type of motive approved of in the case law. See, e.g., State v. Elmore, 139 Wn.2d 250, 286, 985 P.2d 289 (1999) (prior molestation of 14-year-old murder victim when she was five was properly admitted; defendant admitted her threat to disclose prior molestation served in part as a catalyst for the murder); Powell, 126 Wn.2d at 260-61 (evidence of defendant's previous assaults of wife on several occasions was admissible to show that their hostile relationship was motive for her murder); State v. Burkins, 94 Wn. App. 677,

688, 973 P.2d 15 (1999) (evidence of defendant's sexual demands on another woman under similar circumstances to those leading up to the murder was admissible to show defendant's motive for murder was victim's refusal to consent to his sexual demands). The current case is nothing like those cases. Balanced against the minimal probative value, the danger of unfair prejudice here was high. Thus, the court abused its discretion in admitting the evidence of the uncharged acts.[7]

## II.    Harmless Error

Finally, we must consider whether the trial court's improper admission of the two uncharged incidents between Wilson and R.B. was harmless error. When analyzing the erroneous admission of evidence under ER 404(b), we apply the nonconstitutional harmless error standard. State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014). This requires us to decide whether "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." Id. The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole. Nghiem v. State, 73 Wn. App. 405, 413, 869 P.2d 1086 (1994).

In this case, we cannot conclude that the trial court's errors were harmless. After the jury could not reach a verdict on Count 2, which was based on the alleged 2018 conduct, that charge was dismissed. Because Count 2 was dismissed, we review the evidence only as it pertains to Count 1. To the extent the uncharged incidents were

---

[7] Any argument that the uncharged incidents are relevant because they show motive and intent for the 2018 act charged in Count 2 is unavailing, as Count 2 was dismissed. In other words, the State cannot claim that a permissible purpose relating to Count 2 establishes a permissible purpose for admitting the evidence to prove Count 1.

admitted to prove the dismissed charge, not the charge of conviction, there was additional risk that the jury relied on the evidence for an impermissible purpose.

The evidence as to Count 1 was also far from overwhelming. Twice, directly after R.B.'s erroneously admitted testimony about the wrist grabbing incident and again after the testimony about the electronics incident, the court instructed the jury to consider the evidence only for the purpose of considering whether the charged offenses were committed for the purpose of sexual gratification as to Count 1 and/or with sexual motivation as to Count 2, and not for any other purpose. The jury also received written jury instruction 10, which stated as follows:

> You heard testimony in this matter about accusations by R.B. that Mr. Wilson grabbed her wrist and tried to pull her into his bedroom and that Mr. Wilson said he would return R.B.'s property to her if she let him 'feel her up'. That information may be considered by you only for the purpose of considering whether the offense charged in Count I was done for the purpose of gratifying sexual desire and whether the offense charged in Count II was committed for the purpose of sexual gratification. You may give such weight and credibility to this evidence as you see fit, consistent with your consideration of any and all of the evidence in this matter. You may not consider this evidence for any other purpose. Any discussion of this evidence during your deliberations must be consistent with this limitation.

A limiting instruction assumes that the trial court admitted the evidence for some permissible purpose; it is intended to "restrict the evidence to its proper scope." ER 105. However, a limiting instruction cannot render inadmissible evidence admissible. Further, because we presume that jurors follow limiting instructions, State v. Lough, 125 Wn.2d 847, 864, 889 P.2d 487 (1995), the trial court's direction to the jury to focus precisely on the prohibited purpose—propensity—magnified the harmful effect of the improperly admitted evidence of uncharged acts.

11

Propensity evidence is particularly prejudicial in sex offense cases. Saltarelli, 98 Wn.2d at 363. Without the improperly admitted evidence of uncharged acts, the State's additional evidence was problematic. The defense raised significant questions about R.B.'s credibility.

Wilson presented evidence that R.B. falsely accused an ex-boyfriend of sexual assault. R.B. testified that her father and stepmother made her say the boyfriend had raped her. However, R.B.'s father testified that she had disclosed to him that she had consensual sex with her boyfriend while she was supposed to be babysitting and that he never called the incident a rape or told R.B. to do so. In closing arguments, Wilson's attorney highlighted this testimony for the jury to establish R.B.'s history of lying, including lies about sexual assault.

Wilson's counsel also reminded the jury that R.B. told conflicting stories about the molestation, and even her family doubted the veracity of her allegations. R.B.'s aunt, Christina Campos, testified on Wilson's behalf. When R.B. was 13 or 14, she first told Campos that Wilson had recently touched her inappropriately, and Campos reported the information to R.B.'s mother, Brenda. Brenda said that "[R.B.] was full of shit, as usual." According to Campos, R.B. subsequently told her that the incidents had happened when she was 11, rather than recently. At that point, Betty "piped up" to say that R.B. was 7, not 11. When R.B. replied, "But you guys told me it was 11," Betty "lost her shit," becoming physically violent and screaming at R.B. to "shut the fuck up" and do as she was told. Later, when Campos asked R.B. if she had lied about the incident, R.B. responded, "Yep," and smiled.

R.B. subsequently wrote Campos an apology letter for lying. However, R.B. testified that she wrote the letter because Campos told her to, and because she loved her aunt and wanted Campos to talk to her again. Additionally, R.B. said that it was her mother Brenda who had made her lie to Campos by saying that Wilson had not molested her. Wilson's closing argument reminded the jury of these inconsistencies.

Wilson argued that R.B. might have made the allegations to make her mother care about her. Another defense theory was that R.B. fabricated the molestation because she wanted to go live with her father. R.B. and Campos testified that Brenda and Betty physically and emotionally abused R.B. as a child, allegations that Brenda and Betty denied or minimized but that could suggest that Brenda and Betty testified against Wilson to deflect attention from their own actions toward R.B. Moreover, Brenda and Betty's testimony differed as to when the meteor incident occurred and when R.B. disclosed it to them.[8] Thus, while Brenda and Betty corroborated that the incident occurred, there were questions about their credibility.

Particularly in light of these credibility issues for key witnesses, the evidence about the two uncharged incidents was of more than minor significance to the State's case. Highlighting Wilson's lustful disposition toward R.B. likely made the jury more apt to believe Wilson committed the charged act. Propensity evidence regarding other incidents to establish Wilson engaged in conduct toward R.B. for the purpose of sexual gratification and/or with sexual motivation was highly prejudicial. The court repeatedly

---

[8] Brenda recalled that a couple of days after the meteor shower event, R.B. came to her upset and told her that Wilson had put his hand up her shirt and his hand down her pants, and she immediately took R.B. to tell Betty. Betty testified that it was several months after the alleged incident when R.B. told her "he touched me there" while pointing to her "female parts."

called attention to the uncharged acts through limiting instructions that heightened the risk that the jury would rely on the improper evidence.

Accordingly, we cannot say that the trial court's error was harmless. We reverse and remand for new trial.[9]

_Chung, J._

WE CONCUR:

_Brennan, J_     _Dwyer, J._

---

[9] For the first time on appeal, Wilson alleges that the trial court erred by admitting hearsay statements the victim made to her mother and grandmother regarding the abuse when she was seven. Absent manifest constitutional error, a party may not raise an objection that was not properly preserved at trial. See, e.g., State v. Powell, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). An evidentiary error is generally not of constitutional magnitude. State v. Everybodytalksabout, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002). Because we reverse on other grounds, and because Wilson's hearsay challenge was not properly preserved, we decline to review it here.