IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | |
| | ) | No.  38328-8-III |
| ROGER W. FLOOK, | ) | |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |

STAAB, J. — After this court affirmed Roger Flook's conviction for first degree child molestation on direct appeal, he filed this timely personal restraint petition (PRP). He raises four issues, and argues that his conviction should be reversed because: (1) his due process right to a fair trial was violated when the judge presiding over his trial was later convicted of crimes related to sexual misconduct, (2) the judge's conduct violated the non-constitutional appearance of fairness doctrine, (3) the trial court abused its discretion in excluding impeachment evidence, and (4) the trial court abused its discretion in admitting evidence of Flook's lustful disposition toward the victim.

While we agree that the trial court erred in admitting evidence to show lustful disposition, Flook is not entitled to relief because he has failed to show that the error caused a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice.  We disagree with the remainder of Flook's arguments and deny his petition.

No. 38328-8-III
*In re Pers. Restraint of Flook*

BACKGROUND

Flook and Martha Montenegro were husband and wife.[1]  Montenegro has a

daughter (AS) and a son (JS) from a previous marriage.

In June 2014, when AS was 11 years old, the family of four attended a marriage

retreat.  They stayed in a hotel room with one large bed in which they slept side by side.

Montenegro and Flook slept on the outside, and JS slept next to Montenegro and AS next

to Flook.

In the middle of the night, AS awakened when Flook put his hand on her upper

thigh.  Flook removed his hand and replaced it on AS's hip area.  Flook then moved his

hand under AS's pants and eventually under her underwear, touching her vaginal area.

AS turned away from Flook and put her arm between her legs at which point Flook

grabbed her arm and whispered "come on."  Rep. of Proc. (RP) at 478.

AS later described the incident to a friend.  Eventually, the incident was reported

to Child Protective Services and the Whitman County Sheriff's Office.

*First Trial and Discovery of Video*

Following the investigation, Flook was arrested and the State charged him with

one count of first degree rape of a child and one count of first degree child molestation.

---

[1] Unless otherwise noted, the facts in this case are taken from this court's recent decision from Flook's second trial in *State v. Flook*, No. 36610-3-III (Wash. Ct. App. May 5, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/366103_unp.pdf.

2

A jury found Flook guilty of both charges, and the trial court sentenced him to 174 months to life for the charge of first degree child molestation. *State v. Flook*, No. 34220-4-III, slip op. at 5 (Wash. Ct. App. Jul. 11, 2017) (unpublished), https://www.courts .wa.gov/opinions/pdf/342204_unp.pdf.

Flook appealed, and this court reversed his convictions and remanded for a new trial, determining that a law enforcement officer had improperly vouched for AS's credibility and Flook's lack of veracity. *Id.* at 1.

Meanwhile, Montenegro sold Flook's truck to an acquaintance. After the first trial concluded, the acquaintance discovered a thumb drive hidden under the truck's dashboard and a cache of pornographic videos stored on the device. Most of the videos were adult pornography, but two of the files were encoded differently. The acquaintance opened the videos and found they were voyeuristic, homemade videos of a young girl bathing. He contacted Montenegro, played the videos for her, and at her request, sent the thumb drive to Sheriff Myers who had investigated AS's allegations.

After receiving and reviewing the videos, Sheriff Myers obtained and executed a search warrant for the house where the videos were taken. Sheriff Myers went into the bathroom and confirmed the bathroom tile matched that shown in the video. He also noticed a hole in the bathroom ceiling that matched the angle of where the video was taken. Montenegro later testified that only Flook had access to the attic above the ceiling,

and he went up there a handful of times while they lived together. She further testified

that JS did not have the ability to climb into the attic.[2]

*Procedure and Second trial*

Following this court's decision in the first appeal, a second trial was held, starting

in December 2018. Flook's pretrial proceedings and trial were overseen by Judge Scott

Gallina.

Prior to trial, the trial court granted the State's motion to admit evidence of

Flook's prior conduct and interactions with AS. Over Flook's objection, the trial court

determined that the following evidence was admissible to show Flook's lustful

disposition toward AS: (1) testimony about Flook patting AS on the buttocks, (2)

testimony about Flook showing AS anime pornography and discussing pornographic

items and sex with her, (3) the video recording of AS in the bathtub located on the thumb

drive, and (4) testimony that Flook had AS sit on his lap. Although the trial court also

determined that all of the evidence, except for the video recording, was relevant because

it showed either intent or grooming, the jury was instructed that the evidence "may only

be considered . . . to the extent [the jury] find[s] it relevant to issues of whether Mr. Flook

had a lustful disposition towards [AS]." Clerk's Papers (CP) at 111.

---

[2] The State separately filed additional charges related to the videos in Whitman County against Flook.

4

During voir dire, the trial court explained to the jury that they were required to speak into the microphone because there was no transcriptionist:

We used to have a transcriptionist that would sit down here in the well and type up everything as we went along, but she has since been replaced by this less-attractive piece of machinery down here that records everything digitally.

RP at 16.

Additionally, while the parties were making their preemptory challenges, the trial court asked the jury trivia questions to distract them. One of the questions related to a law making it illegal to ride an ugly horse. Judge Gallina commented, "That's gotta be taken off the books in 2018. We're over horse shaming." Pet'rs App'x at 71.

Prior to AS testifying at trial, the State requested that the victim advocate be permitted to sit by her while she testified. Before ruling on the State's request, the trial court questioned the victim advocate about AS's state of mind regarding testifying. The trial court ultimately determined that the victim advocate would sit near AS while she testified.

*Testimony at Issue in Petition*

Montenegro testified at trial. During cross-examination, defense counsel asked her whether she once caught JS and AS playing sex games together. She responded, "Absolutely not true." RP at 585.

5

AS's friend also testified. During cross-examination, defense counsel asked the friend whether AS ever talked to her about "sexual contact she was having with her boyfriend." RP at 630. The State objected. The trial court excused the jury, heard argument, and ruled that the testimony was inadmissible under the rape shield statute.

Flook elected to testify. Defense counsel asked Flook about the incident involving AS and JS, and the State objected. The State noted Montenegro had denied that her two children were playing sex games. Defense counsel responded:

> [T]he State is trying to portray A.S. as an innocent waif, we have—the jury should have an opportunity to hear all of the evidence.

RP at 761. Defense counsel then made an offer of proof, stating that Flook would testify that he had heard Montenegro and AS screaming and yelling in the bathroom. Montenegro then came out upset and said she had caught AS and JS experimenting sexually and had disciplined AS. The State objected based on the rape shield statute and additionally objected on the basis of hearsay and ER 404. Defense counsel did not respond to these additional objections. The court excluded the testimony.[3]

During the testimony of AS's therapist, the trial court twice made comments to the State regarding how to phrase questions following Flook's objection to the State's

---

[3] In his petition, Flook suggests that defense counsel was trying to introduce past sexual behavior to rebut the State's argument that AS's sexual knowledge could only have come from her interactions with Flook. Flook does not cite to the record where the State allegedly made this argument.

6

questions. Additionally, after the parties briefly discussed an objection from Flook,

Judge Gallina directed the State to continue its questioning:

> I'm going to hold up all the talking for a moment. You can continue to ask the question about what actions she took in response to information she was given, if any.

RP at 248.

The jury found Flook guilty of first degree child molestation but acquitted him of

the first degree child rape charge.

*Sentence and Appeal*

At sentencing, the State argued that, although the trial court had previously

sentenced Flook to a mid-range sentence for the first degree child molestation conviction,

the videos taken by Flook of AS and found by the State since the first trial justified a

longer sentence. The State maintained that the video evidence "demonstrate[d] [Flook's]

danger to future victims and militate[d] for a sentence at the high end of the range." CP

at 135.

Because Flook was convicted of first degree child molestation, he was subject to

an indeterminate sentence with a maximum term of life in prison. The trial court entered

a judgment of 186 months to life incarceration, which was 12 months longer than the

sentence imposed for the same charge following Flook's first trial, but still within the

standard range.

7

Flook appealed, arguing that the trial court abused its discretion in excluding his testimony regarding Montenegro's prior statements about AS and JS playing sex games. This court affirmed Flook's conviction. In doing so, we concluded that the trial court did not abuse its discretion in excluding this evidence.

*Charges Against Judge Gallina*

In response to multiple reports from Asotin County courthouse staff that Judge Gallina, the judge who oversaw Flook's trial and related proceedings, had harassed, assaulted, and raped courthouse employees, the county's private insurance and risk management firm conducted an internal investigation. Two months after Judge Gallina sentenced Flook, the sheriff's office received a summary of the investigation and asked the Washington State Patrol (WSP) to conduct a criminal investigation into Judge Gallina.

During the investigation, the WSP interviewed the victim advocate who worked with AS during Flook's trial. According to the victim advocate, she had been victimized by Judge Gallina in about 2007 and in 2014.

On April 3, 2019, Judge Gallina learned of the investigation into the allegations of sexual misconduct against him.

Following the investigation, the Washington Attorney General charged Judge Gallina with several counts related to the sexual misconduct allegations. However, allegations related to Judge Gallina's misconduct against the victim advocate were not a

part of the charges. After Flook filed this PRP, Judge Gallina pleaded guilty to one count

of third degree assault with sexual motivation and one count of fourth degree assault with

sexual motivation.

## ANALYSIS

1. STANDARD OF REVIEW

Collateral relief from a conviction is an extraordinary remedy that seeks to disturb

a final judgment; therefore, a personal restraint petitioner must meet a high standard to

obtain relief. *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013).

When a petitioner's request for relief is based on a claim of trial court error, the petitioner

in most cases must demonstrate that they were actually and substantially prejudiced as a

result of a constitutional error, or that the trial suffered from a fundamental defect of a

non-constitutional nature that inherently resulted in a complete miscarriage of justice. *In

re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016). The petitioner

must make this showing by a preponderance of the evidence. *In re Pers. Restraint of

Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

Actual and substantial prejudice requires that the petitioner "'shoulder the burden

of showing, not merely that the errors at [their] trial created a *possibility* of prejudice,'

but that the outcome would more likely than not have been different had the alleged error

not occurred." *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978

(2019) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982)).

This heightened standard for relief on a collateral attack does not apply if the petitioner could not have raised their ground for relief on direct appeal because the facts supporting relief were not a part of the record. *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). Instead, the petitioner is only required to show they are entitled to relief under RAP 16.4(c), which provides relief where a petitioner demonstrates their restraint is unlawful for specific enumerated reasons. *Sandoval*, 171 Wn.2d at 169.

To avoid dismissal, the petitioner must support their claims with facts and not merely bald or conclusory allegations. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990). The supporting evidence must be based on "more than speculation, conjecture, or inadmissible hearsay," and failure to meet this standard requires dismissal of the petition. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). This court will dismiss a petition if it "fails to present an arguable basis for collateral relief either in law or in fact, given the constraints of the personal restraint petition vehicle." *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 686-87, 363 P.3d 577 (2015).

2.     JUDICIAL MISCONDUCT

Flook argues that Judge Gallina's misconduct directly impacted his trial and violated both his constitutional due process rights and the non-constitutional appearance

of fairness doctrine. Flook's petition correctly points out that a cornerstone of an effective justice system is the public's belief in the integrity of our judges. "An independent, fair and impartial judiciary is indispensable to our system of justice." CJC Preamble [1]. There is no doubt that Judge Gallina committed misconduct and that his reprehensible behavior has caused harm to the public's trust in our judiciary. Nevertheless, Judge Gallina's misconduct does not provide a basis for reversing Flook's conviction because he does not demonstrate that Judge Gallina was laboring under a conflict of interest during Flook's trial and sentencing.

Flook makes several arguments pertaining to his claim of judicial bias. First, he argues that Judge Gallina's misconduct created an unacceptable risk of bias in violation of his due process right to an impartial tribunal.[4] Additionally, Flook contends that Judge Gallina's misconduct had a direct impact on his case. To support this argument, Flook points to several of the judge's evidentiary decisions and argues that they demonstrate actual bias and suggest that Judge Gallina was attempting to camouflage his own misconduct. Flook also points out that the victim advocate and court employees involved in his case were victims of Judge Gallina's misconduct and Judge Gallina made suggestive and inappropriate comments during the trial. After carefully reviewing the

---

[4] Flook does not specify whether he is raising a federal or state due process argument. However, the federal and state rights under these clauses are indistinguishable. *See State v. Manussier*, 129 Wn.2d 652, 679-80, 921 P.2d 473 (1996). Accordingly, the analysis is the same regardless of whether he is relying on the state or federal right.

record, we conclude that Flook has failed to demonstrate that Judge Gallina's misconduct created an unacceptable risk of bias or directly impacted Flook's trial sufficient to demonstrate a conflict of interest that requires reversal.

Like every party to a court proceeding, Flook is entitled to a fair trial before an impartial judge. "'A fair trial in a fair tribunal is a basic requirement of due process.'" *Echavarria v. Filson*, 896 F.3d 1118, 1128 (9th Cir. 2018) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)). Due process requires a trial before a judge with no bias against the defendant and no interest in the case's outcome. *Bracy v. Gramley*, 520 U.S. 899, 904-05, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997). "'Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the *probability* of unfairness.'" *Echavarria*, 896 F.3d at 1128 (quoting *Murchison*, 349 U.S. at 136).

We start with the presumption that the trial court performed its functions without bias or prejudice. *State v. Hecht*, 2 Wn. App. 2d 359, 369, 409 P.3d 1146 (2018). A party claiming judicial bias has the burden of showing the judge's actual or potential bias. *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172 (1992).

The facts supporting Flook's request for relief were not a part of the initial trial court record. Therefore, Flook could not have raised this issue on direct appeal. Accordingly, Flook is not required to show actual and substantial prejudice to be entitled to relief on this ground. *See Sandoval*, 171 Wn.2d at 169. Rather, he is only required to

show that he is entitled to relief under RAP 16.4(c). *See Id.* at 169. The rule states, in relevant part, that a petitioner will be entitled to relief where their conviction "was obtained . . . in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(2).

*Unacceptable Risk of Bias*

Flook argues that there was an undue risk that Judge Gallina's misconduct and the subsequent investigation influenced Judge Gallina's decisions at Flook's trial in violation of due process. The State responds that Flook has failed to demonstrate that Judge Gallina was laboring under a conflict of interest at the time of Flook's trial because there is no evidence that Judge Gallina knew of any potential or pending investigation into his actions at the time of the trial.

"Due process guarantees 'an absence of actual bias' on the part of a judge." *Williams v. Pennsylvania*, 579 U.S. 1, 8, 136 S. Ct. 1899, 195 L. Ed. 2d 132 (2016) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)). Nevertheless, due process sets a minimum standard or "constitutional floor," and most issues pertaining to judicial disqualifications are governed by statutes and judicial codes. *Bracy*, 520 U.S. at 904. Since actual bias is difficult to discern, courts apply an objective standard to avoid "having to determine whether actual bias is present." *Williams*, 579 U.S. at 8. Under this objective standard, the question is not "whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in

13

his position is likely to be neutral, or whether there is an unconstitutional potential for bias.'" *Id.* (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009)) (internal quotation marks omitted).

In determining whether a defendant's right to a fair trial has been violated based on bias, courts ask whether "'under a realistic appraisal of psychological tendencies and human weakness, the interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Echavarria*, 896 F.3d at 1128 (quoting *Caperton*, 556 U.S. at 883-84) (internal quotations omitted). "Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 580 U.S. 285,287, 137 S. Ct. 905, 197 L. Ed. 2d 167 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)). Ultimately, the question is whether "the judge is laboring under a conflict of interest." *In re Pers. Restraint of Ayerst*, 17 Wn. App. 2d 356, 364, 486 P.3d 943 (2021).

Flook contends that Gallina's misconduct is similar to misconduct found reversible by the Ninth Circuit in *Echavarria*. In *Echavarria*, the defendant was charged with and convicted of murdering FBI[5] Special Agent John Bailey during an attempted bank robbery in Las Vegas. 896 F.3d at 1120. The defendant was captured in Mexico

14

and claimed that Mexican authorities obtained his confession through torture. *Id*. at 1121.

Although one of its agents was the victim, the FBI continued to be involved in the case, including interviewing witnesses, securing physical evidence, and sending agents to Mexico when the defendant was apprehended. *Echavarria*, 896 F.3d at 1120-23. The agency made it clear to the trial court that the case was a matter of "great importance" "because of the fact that it was a special agent of the FBI who was a victim of this homicide." *Id.* at 1120. The defendant's pre-trial motion to suppress his confession required the judge to determine "*inter alia*, whether FBI agents had known about or been involved in the use of torture in obtaining [the defendant's] confession." *Id.* at 1132. After the judge denied the motion, Echavarria was convicted and sentenced to death. *Id*. at 1125.

Following the trial, the defendant learned that the judge overseeing his trial had been investigated several years prior for corruption, fraud, and perjury by Special Agent Bailey. *Id.* at 1123-24. The investigation results were eventually turned over to State authorities, who did not file charges against the judge. It was also revealed that before trial, the FBI, the State, and the judge recognized and discussed the risk of bias, and the importance of informing the defendant of the risk. *Id.* at 1124-25, 1132. However, the defendant was never informed. *Id.* at 1132.

---

[5] Federal Bureau of Investigation.

After learning of the judge's history with the FBI and specifically Agent Bailey, the defendant collaterally attacked his conviction, raising several arguments, including that the circumstances created an objectively unacceptable risk of judicial bias. The Ninth Circuit agreed, noting that this issue was separate and distinct from raising a claim of actual, subjective bias. *Id*. at 1130. Instead, "A showing of a constitutionally intolerable risk of bias does not require proof of actual bias." *Id*.

Critical to the Ninth Circuit's finding of a risk of bias was the judge's knowledge, at the time of trial, of the prior investigation into his own misconduct by the agent who was the murder victim in the defendant's case. The judge was also aware that the allegations and possible charges against him remained open, and the FBI remained involved in the defendant's case and considered it very important. Given this knowledge, "An average judge in that position would have feared that rulings favoring [the defendant], tipping the outcome towards acquittal or a sentence less than death, could cost him his reputation, his judgeship, and possibly his liberty." *Id*. at 1131. Furthermore, the defendant's suppression motion put the integrity of the FBI before the judge. *Id*. at 1132. And even though the investigation of the judge had ended years earlier, a judge in this position might fear that the FBI could reopen its investigation or renew requests for prosecution if the judge made unfavorable rulings. *Id*. The Ninth Circuit concluded that under these circumstances, "the risk of bias was extraordinary in both its nature and severity." *Id*.

16

Flook claims that his case is similar to *Echavarria*. He contends that since the charges in his case were similar to Gallina's misconduct, there was an unacceptable risk of bias. However, as the State points out, unlike the judge in *Echavarria*, there is no evidence that Judge Gallina knew of an impending investigation at the time of Flook's trial or sentencing. In *Echavarria*, the Court found an unacceptable risk of bias because of what the judge knew and how it might influence his decisions. Flook does not explain how a judge can be influenced by events that he is either unaware of or did not exist at the time.

Another compelling factor in *Echavarria*, was that the agency investigating the judge was also a primary participant in the case before the judge. In Flook's case, the agencies who investigated and charged Judge Gallina (Washington State Patrol and Washington Attorney General's Office) were not the same agencies who investigated and charged Flook (Whitman and Asotin County Sherriff and Asotin County Prosecuting Attorney). Flook has failed to point to any overlap between the two investigations that would have created a risk of bias even if Judge Gallina had been aware of the pending investigation.

Flook also points out that Judge Gallina took specific steps to hide his misconduct and argues that Judge Gallina was motivated by his fear of being caught. The record shows that Judge Gallina's sexual misconduct persisted for over a decade. While some of his actions demonstrate a general concern with being caught, "there is no reason to

17

believe Judge Gallina was laboring under a conflict between his duties as a jurist and a desire to avoid criminal prosecution." *Ayerst*, 17 Wn. App. 2d at 365. Flook fails to cite any authority demonstrating an unacceptable risk of bias when the judge is unaware of impending charges.

### Direct Impact on Flook's Case

We have previously rejected the argument that Judge Gallina's misconduct was sufficient to require reversal and remand of cases in which he presided before charges were filed against him. *State v. Williams*, 15 Wn. App. 2d 841, 847, 480 P.3d 1145 (2020); *Ayerst*, 17 Wn. App. 2d at 365. In *Williams,* the defendant sought relief from conviction, arguing that pending charges against Judge Gallina violated the code of judicial conduct and the appearance of fairness doctrine. We denied relief, holding that even if Judge Gallina was convicted of those charges, the allegations were insufficient to require reversal of the defendant's conviction without showing a direct impact on the case itself. *Williams*, 15 Wn. App. 2d at 849. In particular, we held that violations of the CJC alone were insufficient to undermine a conviction. *Id*. Instead, the defendant must "point to misconduct violating the CJC that constituted a fundamental and substantial irregularity in the court's proceedings in his case, and one where the interests of justice most urgently require relief." *Id*. With respect to the appearance of fairness doctrine, we held that the defendant failed to point to any particular ruling by Judge Gallina that exhibited bias or partiality. *Id*. at 850.

Flook contends that unlike the defendant in *Williams*, Judge Gallina's misconduct directly impacted Flook's case and demonstrated actual bias. Flook asserts that Judge Gallina directed his misconduct toward personnel in the court and made several inappropriate comments during the trial. In addition, Flook argues that Judge Gallina made several evidentiary rulings that demonstrate bias and that Judge Gallina was attempting to hide his misconduct and appease the State and the public by camouflaging or overcompensating in his rulings.

Flook's first argument is that Judge Gallina's misconduct directly impacted his trial because Judge Gallina's alleged victims participated in Flook's trial and Judge Gallina made inappropriate comments during Flook's trial. Flook points out that Judge Gallina's misconduct was so pervasive that court personnel developed safety plans to avoid being alone with him.

One of Judge Gallina's alleged victims was a victim advocate.[6] Flook points out that one of the issues raised in his trial was whether the advocate could sit with the minor victim during the victim's testimony. Flook argues that Judge Gallina's decision to allow the advocate to sit with the victim during trial was possibly motivated by his misconduct.

As the State points out, Flook fails to demonstrate how Judge Gallina's misconduct toward court personnel or his derogatory comments raises a risk of bias

---

[6] We say "alleged" only because Judge Gallina eventually pleaded guilty to certain charges that did not pertain to the advocate.

19

toward Flook. While Flook suggests that Judge Gallina's decision to allow the advocate to sit with the victim during her testimony could have been subjectively motivated by Judge Gallina's misconduct, Flook did not challenge this decision on direct review and does not contend now that the decision was objectively unreasonable.

Flook also contends that Judge Gallina's evidentiary rulings, when considered individually or as a whole, demonstrated how Judge Gallina was biased toward Mr. Flook. He argues that Judge Gallina repeatedly ruled in favor of the prosecution, even when the law favored the defense. These included rulings on hearsay, impeachment evidence, credibility, and prior bad acts.[7] Flook acknowledges that some of these decisions were upheld on direct appeal, and others are not being independently challenged. However, he contends that Judge Gallina's bias could have affected how he exercised his discretion.

"Judicial rulings alone almost never constitute a valid showing of bias." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). In *Echavarria*, the

---

[7] For instance, Flook argues that Judge Gallina's bias influenced his decision related to the victim's sexual history. In his petition, Flook contends that the State opened the door under the Rape Shield Law, RCW 9A.44.020(4), when it argued that the victim's sexual knowledge could only have come from prior interactions with Flook. The record cited by Flook does not support his characterization of the State's argument. Instead, the cited record indicates that Flook's trial counsel was claiming (without explanation) that evidence of AS's sexual conduct with her boyfriend was relevant to her credibility. On direct appeal, the State successfully argued that the rape shield statute prevented this evidence for this purpose. *Flook*, No. 36610-3-III, slip op. at 4.

judge was asked to decide an evidentiary motion that went to the integrity of the FBI

when the judge knew the FBI had evidence against the judge, could seek criminal charges

against the judge and knew that this particular case was very important to the FBI. The

ruling itself was not evidence of bias. Instead, the defendant's evidence of bias directly

tied the judge's prior misconduct to that particular case and demonstrated an objective

conflict of interest.

Here, there is no such evidence. While Flook points to various evidentiary rulings

as evidence of how Judge Gallina was biased, he fails to point to any evidence showing

an objective conflict of interest. Instead, Flook's claim that objectively reasonable

evidentiary rulings were nonetheless influenced by improper bias is based on speculation.

Finally, Flook asserts that Judge Gallina was acting with "camouflaging intent" to

cover up his misconduct and appear to sympathize with victims of sexual abuse. In

support of his argument that a camouflaging intent is sufficient to show a risk of bias, he

cites to *Bracy*, 520 U.S. 899.

In *Bracy*, the judge presiding over the petitioner's trial was subsequently convicted

of taking bribes from other defendants but had not taken a bribe in the petitioner's case.

520 U.S. at 901. The petitioner argued that the judge was biased in his case because the

judge was camouflaging his misconduct or overcompensating by ruling in the

government's favor when there were no bribes. *Bracy*, 520 U.S. at 901-02. The Court

characterized this argument as "speculative" but indicated that "*if it could be proved*,

such compensatory, camouflaging bias on [the judge]'s part in petitioner's own case would violate the Due Process Clause of the Fourteenth Amendment." *Id*. at 905 (emphasis added). Thus, the Court allowed further discovery on this issue.

In this case, Flook argues that Judge Gallina's rulings generally favored the State, and Judge Gallina suggested questions to the prosecution but did not make similar suggestions to Flook's attorney. Flook speculates that Judge Gallina desired to appear on the side of women to be more believable should allegations be brought against him. In *Ayerst*, we rejected a similar argument where the defendant argued that Judge Gallina "must have been conflicted because he knew he was engaged in unlawful criminal activity and therefore would have wanted to issue rulings deflecting attention away from himself." 17 Wn. App. 2d at 365.

Flook also argues that his sentence following his second trial is evidence of bias and camouflaging. At Flook's second trial following remand from this court, the jury acquitted Flook of first degree rape of a child but found him guilty of first degree child molestation. Despite acquittal on the more serious charge, Judge Gallina sentenced Flook to 186 months to life on the child molestation conviction, 12 months longer than the sentence on this charge at the first trial, but still within the standard guideline range. The State points out that it advocated for a longer sentence based on discovery of the voyeuristic video of the victim between the two trials. While Flook argues that the longer sentence is evidence of a bias, he fails to demonstrate why Judge Gallina would be biased

against Flook. Similar to the petitioner in *Bracy*, if Flook had proof of camouflaging, it could demonstrate bias. Without evidence, his arguments are speculative.

Flook makes the alternative contention that Judge Gallina's conduct violated Washington's appearance of fairness doctrine. Similar to the due process challenge, the nonconstitutional appearance of fairness doctrine presumes that a judge acts without bias and places the burden on the petitioner to produce evidence demonstrating bias on the part of the judge. *Williams*, 15 Wn. App. 2d at 849. We have already held in *Williams*, that absent a showing of particularized bias or interest in a specific case, Judge Gallina's misconduct does not provide relief for violating the appearance of fairness doctrine. *Id*. at 850. As we note above, Flook does not produce evidence that would cause an objective observer to believe that Judge Gallina's unrelated misconduct created a bias toward Flook or a motive to change the outcome of Flook's case.

The fact that Judge Gallina committed reprehensible acts toward court personnel for years is appalling and alarming. Nevertheless, it does not provide relief for Flook because he fails to produce any evidence that Judge Gallina's misconduct created an objective conflict of interest in Flook's case.

3.      IMPEACHMENT EVIDENCE

Next, we consider Flook's argument that the trial court violated his constitutional right to present a defense by excluding impeachment evidence related to the testimony of the victim's mother, Montenegro. When asked on cross-examination, Montenegro

denied that she once caught her children, AS and JS, playing sex games together. The State immediately objected, and defense counsel responded that "we'll connect this up. I'm just asking the question." RP at 585. The court indicated that foundational questions should be asked but did not rule on the objection or strike the testimony. RP at 585.

Later, when defense counsel asked Flook about this incident during his testimony, the State objected, arguing that the trial court had previously excluded the evidence under the rape shield statute. Defense counsel made an offer of proof, then responded that evidence of prior abuse was admissible under the rape shield statute, and indicated that the testimony was relevant because "the State is trying to portray A.S. as an innocent waif, we have—the jury should have an opportunity to hear all of the evidence." RP at 761. The State replied that the evidence was hearsay and impermissible prior acts evidence under ER 404. The trial court sustained the objection and excluded Flook's testimony on the subject. We affirmed this ruling on direct appeal. *Flook*, No. 36610-3-III, slip op. at 4.

In his petition, Flook claims the court abused its discretion because Judge Gallina's ruling was based on a false recollection of the record, which affected Flook's Sixth Amendment right to present a defense. Flook now contends that evidence of AS and JS experimenting sexually was key evidence to his defense that JS created the voyeuristic video of AS. While Montenegro's denial had been admitted to the jury, Flook could not impeach her on this topic.

24

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantees the accused the right to present a defense. *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983).

A petitioner may not raise a ground for relief that was already raised and rejected on direct appeal unless the interests of justice require reconsideration of the issue. *In re Pers. Restraint of Knight*, 196 Wn.2d 330, 341, 473 P.3d 663 (2020). A ground is a "distinct legal basis for granting relief." *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688, 717 P.2d 755 (1986), *abrogated on other grounds by In re Pers. Restraint of Gentry*, 179 Wn.2d 614, 316 P.3d 1020 (2014). This relitigation bar on collateral relief cannot be avoided "'merely by supporting a previous ground for relief with different factual allegations or with different legal arguments.'" *Yates*, 177 Wn.2d at 17 (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004)). Doubts as to whether a ground raised in a petition is different than a ground raised on direct appeal should be resolved in favor of the petitioner. *Taylor*, 105 Wn.2d at 688.

On direct appeal, we addressed Flook's argument that the trial court violated his Sixth Amendment right to present a defense by excluding his testimony regarding Montenegro's statements about AS and JS experimenting. Flook claimed that the trial court should not have excluded the evidence under the rape shield statute. *Flook*, No. 36610-3-III, slip op. at 7. In his petition, Flook claims the exclusion of this evidence was an abuse of discretion because the trial court's decision was based on an erroneous

25

recitation of facts on the record, and this violated his right to present a defense because he was prevented from impeaching Montenegro. Flook does not create a new ground merely by reframing a ground previously raised with different facts or legal arguments.

This issue was already raised and rejected on direct appeal. Moreover, Flook does not argue that the interests of justice require this court to reconsider this issue. Accordingly, we decline to address it here.

4.      LUSTFUL DISPOSITION

Next, we consider whether the trial court's admission of prior conduct between Flook and AS for the purposes of showing lustful disposition entitles Flook to relief.

Flook argues that the trial court erred in admitting evidence for the purpose of showing his "lustful disposition" toward AS. After Flook filed his initial petition, the Supreme Court held that lustful disposition is no longer a valid reason for introducing evidence of prior bad acts. *State v. Crossguns*, 199 Wn.2d 282, 505 P.3d 529 (2022). The State acknowledges the holding in *Crossguns* but argues that such evidence is still relevant for other reasons. Regardless, Flook has failed to show that the admission of this evidence resulted in a fundamental defect that would require reversal on collateral review.

Under ER 404(b), parties may admit evidence of prior bad acts for purposes other than showing propensity, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." At the time of Flook's trial and

direct appeal, establishing "lustful disposition" was also a permissible purpose of admitting evidence under ER 404(b). *Crossguns*, 199 Wn.2d at 290. However, in *Crossguns*, our Supreme Court determined that lustful disposition would no longer be relied on as a distinct purpose for admitting evidence under ER 404(b). *Id*. at 290. In doing so, the court noted it was not disturbing the other basis under which ER 404(b) permits evidence to be admitted. *Id*. at 290.

Even where courts have relied on "lustful disposition" for admission of evidence, "the evidence in question has generally been admissible for some other, proper purpose, such as intent, motive, opportunity, common scheme or plan, preparation, and absence of accident or mistake." *Id.* at 294. Particularly in crimes against children, evidence that may have been improperly admitted for "lustful disposition" purposes is still admissible because it establishes the dynamics of the relationship between the victim and the perpetrator. *Id.* at 294-95. Sexual assault of a child often requires the perpetrator to manipulate their relationship with the child. *Id.* at 295. Accordingly, evidence of manipulation in the context of sexual crimes against children shows both a plan and intent because it shows that the perpetrator established a relationship with the child with the plan and intent of having an opportunity to commit sexual assault. *Id.* at 295.

Where a trial court admitted evidence to show "lustful disposition" but also admitted the evidence for other permissible reasons, any error in admitting the evidence is harmless. *Id.* at 300.

27

Here, the trial court admitted evidence to show Flook's lustful disposition toward AS. Although the trial court also noted in its ruling that at least some of the evidence was admissible to show grooming and intent, the trial court instructed the jury that the evidence "may only be considered [by the jury] to the extent [the jury] find[s] it relevant to issues of whether Mr. Flook had a lustful disposition towards [AS]." CP at 111. Accordingly, the evidence was admitted solely for the purpose of showing Flook's lustful disposition, which is no longer a permissible basis for admitting such evidence and therefore was admitted in error.

However, it is not enough that Flook shows that the trial court erred in admitting the evidence. Because he is requesting relief on a nonconstitutional basis, Flook must show more than error and more than prejudice from that error. *Davis*, 152 Wn.2d 671-72. Instead, Flook is entitled to relief only "when 'the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. at 672 (quoting *Cook*, 114 Wn.2d at 813). Although this term has not been defined, Washington courts have determined that a fundamental defect of this dimension is present where a petitioner has received a sentence outside the legal limits. *See In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002); *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 818, 272 P.3d 209 (2012).

Flook does not argue that he has met the fundamental defect standard. Although the admission of the evidence as lustful disposition was error, since the evidence may

28

have been admitted under another exception of ER 404(b), Flook does not show prejudice, much less a complete miscarriage of justice.[8]

5.    CUMULATIVE ERROR

Flook's final argument is that he is entitled to reversal based on the cumulative error doctrine because he was substantially prejudiced by the collective alleged errors. We disagree.

"The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). "The test to determine whether cumulative errors require reversal of a defendant's conviction is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial." *Cross*, 180 Wn.2d at 690.

---

[8] Flook also argues the trial court abused its discretion in admitting the evidence because it was minimally probative and prejudiced Flook. Although it appears that Flook is arguing the trial court erred in admitting the evidence under ER 403, he fails to cite to this rule or any case law that would support this argument. He also argues that admission of the evidence violated his due process right to present a defense but again fails to support this contention with argument or citation to legal authority. We decline to address these arguments. *See* RAP 10.3(a); *Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011) ("We will not address issues raised without proper citation to legal authority.").

This doctrine does not apply because the only error Flook has established in this petition is an evidentiary error. He fails to show any additional defect in the proceedings. Additionally, he fails to argue or explain how he was substantially prejudiced under the totality of the circumstances by admission of the evidence.

We deny the petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.